Lee A. Weiss (SBN 297834)
     lweiss@law111.com
**BERNS WEISS LLP**
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Telephone:     (516) 222-2900
Facsimile:     (818) 936-0232

Albert G. Lum (SBN 259053)
     alum@law111.com
Emmanuel Rayes (SBN 304934)
     erayes@law111.com
**BERNS WEISS LLP**
6800 Owensmouth Avenue, Suite 310
Canoga Park, CA 91303
Telephone:     (818) 961-2000
Facsimile:     (818) 936-0232


Attorneys for Proposed Intervenor, Jeffrey K. Berns

<br>

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE TAX LIABILITIES OF:<br><br>JOHN DOES, United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21. | Case No.: 3:16-cv-06658-JSC<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND PERMITTING LIMITED DISCOVERY**<br><br>Date:        January 19, 2017<br>Time:        9:00 a.m.<br>Courtroom:   F, 15th Floor<br>Judge:       Hon. Jacqueline Scott Corley |

1

2

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ......................................................................................... 2

II.   STATEMENT OF RELEVANT FACTS ...................................................... 3

    A.    IRS Guidance Concerning Virtual Currency ..................................... 3

    B.    The Treasury Department Sharply Criticizes the IRS's Virtual Currency
Policies Due to the IRS's Inability to Provide Clear Guidance to
Taxpayers ......................................................................................... 4

    C.    The IRS Acknowledges Its Failure to Provide Meaningful Virtual
Currency Guidance to Taxpayers and the Need for It to Promulgate Such
Guidance ........................................................................................... 5

    D.    The IRS Has Failed to Issue Any Further Virtual Currency Guidance, but
Now Seeks Information on Over One Million Coinbase Customers for
Supposed Enforcement Purposes ..................................................... 5

    E.    The IRS Summons Covers Movant's Personal Information .................. 7

III.  ARGUMENT ................................................................................................ 8

    A.    Movant Is Entitled to Intervene in This Proceeding as of Right .......... 8

        1.    This Application Is Timely ..................................................... 8

        2.    Movant Has a Legally Protectable Interest Based on the Abuse of
Process Set Forth Herein ...................................................... 8

        3.    There Is a Clear Risk That Movant's Interests Will Be Impaired by
the Disposition of This Action .............................................. 9

        4.    Coinbase Cannot Fully Represent Movant's Interests, as the IRS Is
Not Investigating Coinbase .................................................. 9

    B.    Movant Readily Meets the Standards for Permissive Intervention Pursuant
to Fed. R. Civ. P. 24(b) ................................................................... 10

        1.    This Court Has Independent Jurisdiction Over Movant's Challenge
to the IRS Summons ............................................................ 10

        2.    Movant's Claims and Defenses Are Relevant to the Validity of the
Petition ............................................................................... 11

        3.    The IRS Will Suffer No Prejudice and There Will Be No Undue
Delay if Movant Is Permitted to Intervene. ......................... 11

    C.    The Court Should Quash the IRS Summons As It Is an Abuse of Process
by the IRS Because It Was Issued in Bad Faith ............................... 11

        1.    The TIGTA Report Shows That the IRS Does Not Currently Have
the Ability to Enforce Compliance with Its Vague Virtual
Currency Guidance Issued in 2014 ...................................... 12

        2.    The Unjustifiably Broad Scope of the IRS Summons Indicates
That It Has Not Been Issued in Good Faith or for a Legitimate
Purpose ............................................................................... 13

        3.    The IRS Summons Is Improper if It Is Designed to Seek
Information for Research, as Opposed to Enforcement, Purposes. .......... 16

Case No.: 3:16-cv-06658-JSC          Page i

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

**TABLE OF CONTENTS (cont'd)**

2

PAGE

3

4.  The Petition's Meager Foundation for the IRS Summons Seeking
the Identity and Three Years of Transactions for over One Million
Taxpayers Reflects That the IRS Does Not Have a Legitimate
Purpose ........................................................................................... 18

4

a.  The IRS Has Provided Only Three Instances of Taxpayers
Using Bitcoin to Evade Taxes, and the Minimal Details it
Offers Concerning Those Circumstances Does Not Justify
the Broad Scope of the IRS Summons ......................................... 18

5

6

b.  The Other Information Provided by the IRS Is Far Too
General to Support the IRS Summons ......................................... 19

7

8

5.  The IRS Has Previously Been Accused of Abusing Its Power to
Improperly Further the Government's Political Agenda ....................... 21

9

D.  If the Court Does Not Quash the IRS Summons, It Should Issue an
Appropriate Protective Order ............................................................. 22

10

1.  Movant Has Readily Demonstrated Good Cause .................................... 22

11

E.  If the Court Does Not Quash the Subpoena or Issue a Protective Order,
Movant Is Entitled to Conduct Limited Discovery and Then an
Evidentiary Hearing Concerning the IRS's Bad Faith ......................... 23

12

13

1.  Movant Has Provided Specific Facts That Raise Doubts
Concerning the IRS's Good Faith in Issuing the IRS Summons ............. 23

14

IV.  CONCLUSION ............................................................................................ 24

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

## TABLE OF AUTHORITIES

**CASES**  **PAGES**

*California ex rel. Lockyer v. United States*
   450 F.3d 436 (9th Cir. 2006) ................................................................. 9

*Defs. of Wildlife v. Johanns*
   No. C 04-4512 PJH, 2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) ........................ 10

*E.E.O.C. v. Nevada Resort Ass'n*
   792 F.2d 882 (9th Cir. 1986) ................................................................. 10

*Hazel Green Ranch, LLC v. U.S. Dep't of Interior*
   No. 1:07-CV-00414OWW-SMS, 2007 WL 2580570 (E.D. Cal. Sept. 5, 2007) ....... 9

*In re Roman Catholic Archbishop of Portland in Oregon*
   661 F.3d 417 (9th Cir. 2011) ................................................................. 22

*Kootenai Tribe of Idaho v. Veneman*
   313 F.3d 1094 (9th Cir. 2002) ............................................................... 11

*LaSalle Nat. Bank*
   437 U.S. 298 (1978) ............................................................................ 12

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*
   534 F. App'x 665 (9th Cir. 2013) ........................................................... 10

*Pearson v. Miller*
   211 F.3d 57 (3d Cir. 2000) ................................................................... 22

*Ramirez v. United States*
   No. SACV 13-00268 JVS, 2013 WL 10822053 (C.D. Cal. June 10, 2013) ........... 12

*Rivera v. NIBCO, Inc.*
   364 F.3d 1057 (9th Cir. 2004) ............................................................... 22

*Sagebrush Rebellion, Inc. v. Watt*
   713 F.2d 525 (9th Cir. 1983) ................................................................. 9

*Skellerup Indus. Ltd. v. City of Los Angeles*
   163 F.R.D. 598 (C.D. Cal. 1995) ............................................................ 22

*Stewart v. United States*
   511 F.3d 1251 (9th Cir. 2008) ............................................................... 11

*Sw. Ctr. for Biological Diversity v. Berg*
   268 F.3d 810 (9th Cir. 2001) ................................................................. 9

*Tax Liabilities of: John Does, All Unknown Employees of Boundary Waters Rest. v. United States*
   866 F.2d 1015 (8th Cir. 1989) ............................................................... 13

*True the Vote, Inc. v. Internal Revenue Serv.*
   831 F.3d 551 (D.C. Cir. 2016) ............................................................... 21

Case No.: 3:16-cv-06658-JSC      Page iii
**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

# TABLE OF AUTHORITIES (cont'd)

**PAGES**

*United States v. Abrahams*
  905 F.2d 1276 (9th Cir. 1990) ................................................................. 13

*United States v. Andrews*
  No. MISC-95-280 GEB PAN, 1996 WL 442730 (E.D. Cal. May 24, 1996) ............. 8

*United States v. Bisceglia*
  420 U.S. 141 (1975) ..................................................................... 2, 21

*United States v. Church of Scientology of Cal.*
  520 F.2d 818 (9th Cir. 1975) .................................................................. 23

*United States v. Dauphin Deposit Trust Co.*
  385 F.2d 129 (3d Cir. 1967) ................................................................... 13

*United States v. Humble Oil & Refining Co.*
  488 F.2d 953 (5th Cir. 1974) .................................................................. 17

*United States v. Kersting*
  891 F.2d 1407 (9th Cir. 1989) ............................................................... 20

*United States v. Kis*
  658 F.2d 526 (7th Cir. 1981) .................................................................. 24

*United States v. Powell*
  379 U.S. 48 (1964) ........................................................................... 12

*United States v. Ritchie*
  15 F. 3d 592 (6th Cir. 1994) ................................................................. 20

*United States v. Samuels, Kramer & Co.*
  712 F.2d 1342 (9th Cir. 1983) ........................................................... 23, 24

*United States v. Sidley Austin Brown & Wood LLP*
  No. 03 C 9355, 2004 WL 816448 (N.D. Ill. Apr. 15, 2004) ............................. 8, 11

*United States v. State of Wash.*
  86 F.3d 1499 (9th Cir. 1996) .................................................................. 8

*United States v. Theodore*
  479 F.2d 749 (4th Cir. 1973) ................................................................. 13

*Venegas v. Skaggs*
  867 F.2d 527 (9th Cir. 1989) ................................................................. 11

**STATUTES**
26 U.S.C. § 7402(a) ........................................................................... 10
26 U.S.C. § 7601(a) ........................................................................... 17
26 U.S.C. § 7602(a) ........................................................................... 12
26 U.S.C. § 7609(f) ........................................................................... 10
26 U.S.C. § 7609(h) .......................................................................... 10

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

**TABLE OF AUTHORITIES (cont'd)**

PAGES

RULES

Fed. R. Civ. P. 24(a) ................................................................................ 8

Fed. R. Civ. P. 24(b) ............................................................................... 10

Case No.: 3:16-cv-06658-JSC          Page v

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on January 19, 2017, at 9:00 a.m., in the United States District Court for the Northern District of California, Courtroom F, 15th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Jacqueline Scott Corley, presiding, proposed Intervenor Jeffrey K. Berns ("Movant") will move to intervene in the above-captioned proceeding pursuant to Federal Rule of Civil Procedure 24, for the purpose of moving, in the alternative, (a) to quash the John Doe summons ordered to be served upon Coinbase, Inc. pursuant to this Court's order dated November 30, 2016 (the "IRS Summons"), or (b) for a protective order concerning the IRS Summons, or (c) for an order scheduling an evidentiary hearing and permitting Movant to conduct limited discovery concerning the IRS Summons.

The Motion to Intervene is made on the grounds that Movant has an interest in this proceeding that will not be adequately and fully represented by the summoned party, Coinbase, Inc., and that this interest is sufficient to warrant intervention as a matter of right under Rule 24(a), or, alternatively, permissive intervention under Rule 24(b). The Motion to Quash, or, in the alternative, for a Protective Order is made on the grounds that the IRS has no legitimate purpose in seeking the requested documents from Coinbase concerning its users, enforcement of the IRS Summons would constitute an abuse of process as the IRS does not currently have the ability to enforce compliance with its 2014 virtual currency guidance, and the categories of requested documents are so overbroad such that the IRS Summons would require the disclosure of a substantial amount of information and documents that are not relevant to the IRS's stated purpose in issuing the IRS Summons. The portion of the Motion seeking the alternative relief of an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery is made on the ground that Movant has alleged sufficient facts from which the Court can readily question the IRS's good faith in issuing the IRS Summons.

The motion will be based on this notice of motion, the memorandum of points and authorities; the declarations of Jeffrey K. Berns and Albert G. Lum and exhibits; the accompanying request for judicial notice; the pleadings, orders, transcripts, and other papers on file in this action; and any further evidence and arguments as may be presented at the hearing of this motion.

Case No.: 3:16-cv-06658-JSC          Page 1
**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

More than 40 years ago, the Supreme Court stated that the duty of the District Court with

4

respect to an IRS summons was "to see that a legitimate investigation was being conducted and

5

that the summons was no broader than necessary to achieve its purpose." *United States v.*

6

*Bisceglia*, 420 U.S. 141, 146 (1975). The Supreme Court expounded on the District Court's role by

7

stating, "[o]nce a summons is challenged it must be scrutinized by a court to determine whether it

8

seeks information relevant to a legitimate investigative purpose and is not meant 'to harass the

9

taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting

10

on the good faith of the particular investigation.'" *Id.* at 151 (citing *United States v. Powell*, 379

11

U.S. 48, 58 (1964)). The summons at issue here was not sought by the IRS with respect to any

12

"particular investigation," and the IRS has made no attempt to narrow the information covered by

13

the summons to reflect its stated goal of confirming compliance with the tax laws. Instead, based

14

on three isolated incidents and scant other facts, the IRS seeks that Coinbase identify over 1 million

15

American citizens that have transacted in virtual currency and to provide data on every single

16

transaction by those 1 million clients over a 3-year period. The IRS Summons is certainly not what

17

the Supreme Court envisioned. Further, the breadth of the summons, which seeks substantial

18

personal information that is not at all relevant to tax compliance issues, and which could expose

19

these clients to significant risk of having their identity and funds stolen by hackers who have

20

succeeded previously in hacking the federal government, including the IRS, numerous times,

21

makes it easy to conclude that the IRS is engaging in abuse of process.

22

Movant-Proposed Intervenor Jeffrey K. Berns, who has voluntarily chosen to identify

23

himself as a Coinbase customer even though this motion demonstrates that the IRS is not entitled to

24

that information through the subject summons, is not filing this motion to prevent the IRS from

25

seeking records regarding his account due to a concern that he has violated any tax laws with

26

respect to virtual currency transactions. Instead, Movant's intent is to protect the interests of all of

27

Coinbase's customers who are subject to this overbroad summons, even though the IRS has made

28

no showing that any of them have engaged in suspect tax-avoidance conduct. Movant recognizes

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

that Coinbase plans to oppose the summons and fully supports those efforts. However, as it is customers', and not Coinbase's, privacy interests that are at stake, intervention is appropriate to ensure that Coinbase's customers are fully protected.

Alleging that the IRS has abused the John Doe summons process based on apparent ulterior motives is not done lightly here. However, the relevant facts readily support that conclusion. Just three months ago, the Inspector General of the Treasury Department publicly slammed the IRS for issuing confusing and vague guidance regarding the taxation of virtual currency transactions in 2014, and then failing to take any steps in the next two years to provide taxpayers with any clarification. In response, the IRS conceded that such clarification was necessary, but it has yet to provide any new guidance. Nevertheless, the IRS is now seeking millions of records concerning virtual currency transactions under the guise of investigating compliance with the vague tax guidance that it has been unwilling, or unable, to clarify. Further, the Chairman of the IRS has repeatedly expressed his concern that the IRS is strapped for resources, such that it cannot effectively investigate tax compliance. Finally, the IRS Summons does not contain any dollar value or transaction thresholds, and seeks personal information concerning Coinbase's customers that has absolutely nothing to do with taxation issues. Putting these facts together easily suggests that the IRS has an ulterior motive in issuing the subject summons. Indeed, recent scandals reflect that the IRS is not unwilling to use its powers for non-tax collection purposes.

## II.    STATEMENT OF RELEVANT FACTS

### A.    IRS Guidance Concerning Virtual Currency

In March 2014, the IRS issued Notice 2014-21 (the "Notice"), which described how the IRS applies U.S. tax laws and general tax principles to transactions involving virtual currency. Declaration of Senior IRS Revenue Agent David Utzke, filed in support of the Petition (Dkt. No. 2-4) ("Utzke Declaration" or "Utzke Decl."), Ex. A. The Notice defines "virtual currency" as "a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value. In some environments, it operates like 'real' currency… but does not have legal tender status in any jurisdiction." Notice, § 2. The Notice defines "convertible virtual currency" as

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

"virtual currency that has an equivalent value in real currency, or that acts as a substitute for real currency." *Id.*

The Notice states that "[convertible] virtual currency is treated as property," and "[g]eneral tax principles applicable to property transactions apply to transactions using virtual currency." Notice, § 4, A-1. Accordingly, the fair market value of the convertible virtual currency is included in a taxpayer's gross income for a "taxpayer who receives [convertible] virtual currency as payment for goods or services" and when "a taxpayer successfully 'mines' [convertible] virtual currency." Notice, § 4, A-3, A-8. A taxpayer must also pay capital gains tax if "the fair market value of property received in exchange for [convertible] virtual currency exceeds the taxpayer's adjusted basis of the [convertible] virtual currency." Notice, § 4, A-6, A-7.

**B.    The Treasury Department Sharply Criticizes the IRS's Virtual Currency Policies Due to the IRS's Inability to Provide Clear Guidance to Taxpayers.**

On September 21, 2016, the Treasury Inspector General for Tax Administration issued a report titled "As the Use of Virtual Currencies in Taxable Transactions Becomes More Common, Additional Actions Are Needed to Ensure Taxpayer Compliance"[1] ("TIGTA Report"), which criticized the IRS for, among other things, its failure to provide adequate guidance to taxpayers concerning the tax consequences of virtual currency transactions. The Report noted that while the IRS had received and reviewed 36 public comments concerning the Notice, it had taken no action to address these comments even though "information requested by the public [would have been] helpful in understanding how to comply with the tax reporting requirements when using or receiving virtual currencies." TIGTA Report at 3. The Report further stated that, while the IRS acknowledges there may be "a risk of reporting noncompliance through the use of virtual currencies in taxable transactions," the IRS does not even have "a methodology for gathering data on virtual currency use in taxable transactions—data that are necessary to analyze the risk of noncompliance and to estimate its significance." TIGTA Report at 13.

To address the IRS's failures, the Treasury Inspector General recommended that the IRS:

---

[1] A copy of the TIGTA Report is attached as Exhibit 1 to Movant's Request for Judicial Notice ("RFJN").

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1)  develop a coordinated virtual currency strategy that includes outcome goals, a description of how the agency intends to achieve those goals, and an action plan with a timeline for implementation;

2)  provide updated guidance to reflect the necessary documentation requirements and tax treatments needed for the various uses of virtual currencies; and

3)  revise third-party information reporting documents to identify the amounts of virtual currencies used in taxable transactions

TIGTA Report at Highlights; 8-16.

**C.      The IRS Acknowledges Its Failure to Provide Meaningful Virtual Currency Guidance to Taxpayers and the Need for It to Promulgate Such Guidance.**

The IRS agreed with all of the Treasury Inspector General's recommendations (TIGTA Report at 8, 11, 16), but raised its limited budget as an excuse for any future delays in issuing revised virtual currency guidance:

> The IRS agreed that additional guidance would be helpful; however, the IRS conveyed that guidance allocation decisions are based on available resources and other competing organizational and legislative priorities. The IRS will share this recommendation for guidance with the IRS's Office of Chief Counsel for coordination with the Department of the Treasury's Office of Tax Policy.

TIGTA Report at 11. In response, the Treasury Inspector General noted the importance of this guidance such that the IRS should make it a priority:

> While we understand that resources are limited and subject to competing priorities, the IRS's current guidance related to virtual currencies is insufficient. To help taxpayers voluntarily comply with their tax obligations, the IRS should devote some of its efforts to provide adequate direction in this new and complex area.

TIGTA Report at 12.

**D.      The IRS Has Failed to Issue Any Further Virtual Currency Guidance, but Now Seeks Information on Over One Million Coinbase Customers for Supposed Enforcement Purposes.**

Despite agreeing with the TIGTA Report's recommendations, the IRS has not issued any further guidance concerning virtual currency. Yet, on November 17, 2016, the Federal Government ("Petitioner") filed its *Ex Parte* Petition for Leave to Serve "John Doe" Summons (the "IRS Summons") upon Coinbase, Inc. pursuant to 26 U.S.C. § 7609(h)(2). Coinbase is a virtual currency wallet and exchange where merchants and consumers can transact with virtual currencies like

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

Bitcoin. *See* Utzke Decl., ¶¶ 40, 42. Coinbase is registered with FinCEN (*Id*., ¶ 43) and a licensed money transmitter in 34 states, the District of Columbia, and Puerto Rico (RFJN, Ex. 5). The IRS Summons seeks the identification of, and substantial personal and transaction information for, over one million Coinbase customers. Utzke Decl., ¶¶ 39-40.

Petitioner's Memorandum in Support of *Ex Parte* Petition for Leave to Serve John Doe Summons ("Memorandum" or "Mem.") (Dkt. No. 2) contends generally that the requirements for issuing a John Doe summons pursuant to 26 U.S.C. § 7609(f) are satisfied. Mem. at 11-15 ("First, the summons relates to the investigation of an ascertainable group or class of persons, namely U.S. taxpayers who have conducted transactions in convertible virtual currency. Second, there is a reasonable basis for believing that U.S. persons who conducted such transactions may have failed to report income to the IRS, thereby violating one or more provisions of the internal revenue laws. Third, the information sought is not readily available to the IRS from other sources.").

The IRS Summons (Exhibit 1 to the accompanying Declaration of Albert G. Lum ("Lum Decl.")), defines the class of persons purportedly under investigation as "United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21," and seeks the following information and documents from Coinbase for each of its U.S. customers:

> 1. Account/wallet/vault registration records for each account/wallet/vault owned or controlled by the user during the period stated above including, but not limited to, complete user profile, history of changes to user profile from account inception, complete user preferences, complete user security settings and history (including confirmed devices and account activity), complete user payment methods, and any other information related to the funding sources for the account/wallet/vault, regardless of date.

> 2. Any other records of Know-Your-Customer due diligence performed with respect to the user not included in paragraph 1, above.

> 3. For any account/wallet/vault with respect to which the registered user gave any third-party access, control, or transaction approval authority, all powers of attorney, letters of wishes, corporate minutes, or other agreements or instructions granting the third party such access, control, or approval authority.

> 4. All records of account/wallet/vault activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, the names or other identifiers of counterparties to the transaction; requests or instructions to send or receive bitcoin; and, where counterparties transact through their own Coinbase

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

accounts/wallets/vaults, all available information identifying the users of such accounts and their contact information.

5. For each merchant user for which you act as Payment Service Provider, records of all payments processed, including records identifying the user of the wallet charged, if a Coinbase user, or the address of the wallet charged, if not, the date and amount of the transaction, and any other information that will enable the merchant to identify the transaction.

6. All correspondence between Coinbase and the user or any third party with access to the account/wallet/vault pertaining to the account/wallet/vault, including but not limited to letters, memoranda, telegrams, telexes, facsimiles, e-mail, letters of instruction, and memoranda of telephone or oral instructions received.

7. All periodic statements of account or invoices (or the equivalent).

8. All records of payments to or from the user by checks, wire or other electronic transfer, ACH transaction, PayPal transfer, credit or debit card transaction, money order, transfer to or from other digital currency wallet address, or any other method, including records reflecting the form, manner, nature, and purpose of such payment including, but not limited to, ABA routing number and other routing information, payment instructions, and any and all invoices, billing statements, receipts, or other documents memorializing and describing such transaction.

9. All exception reports produced by your AML system, and all records of investigation of such exceptions.

On November 18, 2016, Coinbase issued a statement that it planned to oppose the Petition. *See* https://blog.coinbase.com/2016/11/18/protecting-customer-privacy/.

On November 30, 2016, this Court issued its Order Granting the Petition. Dkt. No. 7.

**E.      The IRS Summons Covers Movant's Personal Information.**

Movant and Proposed Intervenor Jeffrey K. Berns falls within the class of people described in the IRS Summons because he was a registered user of Coinbase during the time period covered by the IRS Summons, he is a U.S. citizen residing in Los Angeles County, California, and he has a U.S. telephone number, U.S. e-mail domain, and U.S. bank account. Declaration of Jeffrey K. Berns ("Berns Decl."), ¶¶ 2, 3. Between January 1, 2013, and December 31, 2015, Movant purchased Bitcoin using Coinbase's exchange. *Id.*, ¶ 4. Movant has provided Coinbase with his personal information. *Id*., ¶ 5. During the period between January 1, 2013 and December 31, 2015, Movant communicated with Coinbase electronically concerning customer service issues related to his account. *Id.*

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

III.    **ARGUMENT**

    A.    **Movant Is Entitled to Intervene in This Proceeding as of Right.**

    Fed. R. Civ. P. 24(a)(2) provides that a non-party is entitled to intervene as of right if it proves that "(1) their application was timely; (2) they 'have an interest relating to the subject matter of the action'; (3) there is a risk that their interests 'will be impaired by the action's disposition'; and (4) their interests are not represented by the Government or [the subpoenaed party]." *United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448, at *3 (N.D. Ill. Apr. 15, 2004) (citation omitted). Movant can readily prove these elements.

        1.    **This Application Is Timely.**

    "The 'timeliness' requirement of Rule 24 is to be construed broadly in favor of the party seeking intervention." *United States v. Andrews*, No. MISC-95-280 GEB PAN, 1996 WL 442730, at *1 (E.D. Cal. May 24, 1996). Courts look at three factors in making this determination: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996) (citation omitted). Movant's application is timely, as he is filing this motion within 13 days of when the Court granted the Petition.

        2.    **Movant Has a Legally Protectable Interest Based on the Abuse of Process Set Forth Herein.**

    "The Supreme Court has recognized two legally protectable interests that may provide a basis for a taxpayer to intervene under Rule 24(a)(2) in an IRS summons enforcement proceeding: a privilege or a claim of abuse of process." *Sidley Austin,* 2004 WL 816448, at *3 (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The IRS is not investigating Movant and there is no basis for it to investigate Movant's Coinbase transactions. Berns Decl., ¶ 4. Further, as set forth below, the IRS has neither the intention nor the ability to review the tax returns of the more than a million American citizens, who are Coinbase customers, for whom it is seeking identity and transaction information. Finally, the IRS has made no effort to tailor the IRS

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1   Summons to any purported indicia of tax-avoiding conduct. Thus, Movant has demonstrated that

2   the IRS Summons constitutes a clear abuse of process.

3          **3.      There Is a Clear Risk That Movant's Interests Will Be Impaired by**

4                    **the Disposition of This Action.**

5          "[A] party has a sufficient interest for intervention purposes if it will suffer a practical

6   impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United*

7   *States*, 450 F.3d 436, 441 (9th Cir. 2006); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810,

8   822 (9th Cir. 2001) ("We follow the guidance of Rule 24 advisory committee notes that state that

9   '[i]f an absentee would be substantially affected in a practical sense by the determination made in

10  an action, he should, as a general rule, be entitled to intervene.'").

11         In the event that Coinbase is unsuccessful in resisting the Summons, Movant's transaction

12  records and other personal information will be released to the IRS even though Movant is not the

13  subject of an IRS investigation and there is no basis for such an investigation. Further, the IRS

14  has not identified any basis for the disclosure of this information (or the disclosure of

15  identification and transaction information for the other Coinbase customers), other than its

16  unsupported conclusion that the mere fact that any taxpayer transacts in Bitcoin means that the

17  taxpayer may be engaging in tax-avoidance behavior.

18         **4.      Coinbase Cannot Fully Represent Movant's Interests, as the IRS Is**

19                   **Not Investigating Coinbase.**

20         "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that

21  representation of its interests 'may be' inadequate and that the burden of making this showing is

22  minimal." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (citing *Trbovich v.*

23  *United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)). Courts consider three factors: "(1) whether

24  the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's

25  arguments; (2) whether the present party is capable and willing to make such arguments; and (3)

26  whether a proposed intervenor would offer any necessary input to the proceedings that other parties

27  would neglect." *Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-CV-00414OWW-

28  SMS, 2007 WL 2580570, at *11 (E.D. Cal. Sept. 5, 2007). "The court also may find that a

Case No.: 3:16-cv-06658-JSC          Page 9
**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1   proposed intervenor's interests are not adequately represented where the intervenor would bring a

2   perspective none of the other parties to the litigation have." *Defs. of Wildlife v. Johanns*, No. C 04-

3   4512 PJH, 2005 WL 3260986, at *8 (N.D. Cal. Dec. 1, 2005).

4        The IRS is not investigating Coinbase's tax liabilities, such that the IRS Summons seeks

5   only customer records. While Coinbase has indicated on November 18, 2016, that it intends to

6   resist the Summons, Coinbase does not have the same interest as Movant. Coinbase's interest,

7   first and foremost, is economic in nature. Movant certainly does not begrudge Coinbase for

8   attempting to protect that interest, but that does not mean that Coinbase and Movant are

9   completely aligned. Movant's primary interest is protecting the privacy of Coinbase's users'

10  information, such that Movant's perspective here is unique.

**B.     Movant Readily Meets the Standards for Permissive Intervention Pursuant
to Fed. R. Civ. P. 24(b).**

13        Pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) (formerly Rule 24(b)(2)), "[o]n

14  timely motion, the court may permit anyone to intervene who … has a claim or defense that

15  shares with the main action a common question of law or fact." "Permissive intervention

16  requires: '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common

17  question of law and fact between the movant's claim or defense and the main action.'" *Mishewal*

18  *Wappo Tribe of Alexander Valley v. Salazar*, 534 F. App'x 665, 667 (9th Cir. 2013) (citations

19  omitted). Courts must also "consider whether the intervention will unduly delay or prejudice the

20  adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

**1.     This Court Has Independent Jurisdiction Over Movant's Challenge to
the IRS Summons.**

23        "A party seeking permissive intervention under Fed.R.Civ.P. 24(b) must establish a basis

24  for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying

25  action." *E.E.O.C. v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9th Cir. 1986). Here, there is no

26  question that this Court has subject matter jurisdiction as Movant is challenging the IRS Summons

27  issued pursuant to this Court's November 30, 2016 Order granting the federal government's

28  Petition filed pursuant to 26 U.S.C. §§ 7402(a), 7609(f), and 7609(h).

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

2

### 2.     Movant's Claims and Defenses Are Relevant to the Validity of the Petition.

3

"The language of [former Rule 24(b)(2)] makes clear that if the would be intervenor's claim or defense contains no question of law or fact that is raised also by the main action, intervention under Rule 24(b)(2) must be denied. But, if there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) abrogated on other grounds by *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Here, Movant is seeking to quash the IRS Summons that is the subject of this proceeding. In *Sidley Austin*, the court permitted intervention under former Rule 24(b)(2), reasoning that "a dispute regarding the sufficiency of the description of the material to be produced is an appropriate basis for a challenge to a summons in an enforcement proceeding." 2004 WL 816448, at *10 (citing *Beacon Federal Savings & Loan,* 718 F.2d at 54 (citing legislative history of I.R.C. § 7609)).

14

15

### 3.     The IRS Will Suffer No Prejudice and There Will Be No Undue Delay if Movant Is Permitted to Intervene.

16

"In exercising its discretion to grant or deny permissive intervention, a court must consider whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties.' Rule 24(b)." *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990). Additionally, "judicial economy is a relevant consideration in deciding a motion for permissive intervention." *Id.* at 531.

21

No undue delay or prejudice to the IRS would result in permitting Movant to intervene to challenge the legitimacy and scope of the IRS Summons. As Coinbase has stated that it plans to challenge the summons, the IRS is already going to need to defend the summons in this Court.

24

25

### C.     The Court Should Quash the IRS Summons As It Is an Abuse of Process by the IRS Because It Was Issued in Bad Faith.

26

Once an IRS summons is challenged, "the IRS must make a prima facie showing that the summons was issued in good faith." *Stewart v. United States,* 511 F.3d 1251, 1254 (9th Cir. 2008) (citing *United States v. Powell,* 379 U.S. 48, 57 (1964)). "Specifically, the IRS must establish that

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

the summons (1) was issued pursuant to a 'legitimate purpose'; (2) seeks information 'relevant' to

that purpose; (3) seeks information that is 'not already within the Commissioner's possession'; and

(4) satisfies all 'administrative steps required by the Code.'" *Id*. If the government can satisfy this

burden, the party challenging the summons needs to "show an abuse of process or a lack of good

faith by the IRS." *Ramirez v. United States*, No. SACV 13-00268 JVS, 2013 WL 10822053, at *3

(C.D. Cal. June 10, 2013), *aff'd*, 604 F. App'x 567 (9th Cir. 2015) (citing *Fortney v. United States*,

59 F.3d 117, 120 (9th Cir. 1995)).

> In *Powell*, the Court explained that in a summons enforcement proceeding:
>
>> It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

379 U.S. at 58. "The purpose of the good-faith inquiry is to determine whether the agency is

honestly pursuing the goals of § 7602[2] by issuing the summons." *LaSalle Nat. Bank*, 437 U.S. 298,

316 (1978). The facts and circumstances present here demonstrate that the IRS has not issued the

IRS Summons for tax enforcement purposes.

### 1.     The TIGTA Report Shows That the IRS Does Not Currently Have the Ability to Enforce Compliance with Its Vague Virtual Currency Guidance Issued in 2014.

As set forth above, the recently issued TIGTA Report demonstrates that the IRS's 2014

virtual currency guidance is woefully insufficient, and thus, in the absence of clearer guidance,

the IRS is not in a position to enforce compliance with the tax code with respect to virtual

currency. The IRS's failure to issue any further virtual currency guidance since 2014, including

in response to the TIGTA Report, is stunning. The Report noted that while the IRS received and

reviewed 36 public comments to its 2014 virtual currency guidance, it took no action in response

---

[2] The IRS may only exercise its investigative powers "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability." 26 U.S.C. § 7602(a).

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

to these comments, even though "information requested by the public [would have been] helpful in understanding how to comply with the tax reporting requirements when using or receiving virtual currencies." TIGTA Report at 3. Further, the Treasury Department indicated that regardless of the IRS's budget constraints, the IRS should focus resources on clarified guidance to aid taxpayers in "voluntarily" complying with the tax code.

Despite the demonstrable need for clarifying virtual currency tax guidance, the IRS has opted not to issue a single word of virtual currency guidance since promulgating admittedly insufficient guidance more than two years ago. Having been unable, or unwilling, to issue such new guidance, it is hard to believe that the IRS has now issued the IRS Summons for a legitimate investigatory purpose. After all, if the IRS admits that it has not properly informed taxpayers of the virtual currency taxation rules, how could it now reasonably seek to review the records of over one million taxpayers for virtual currency tax compliance purposes?

**2.      The Unjustifiably Broad Scope of the IRS Summons Indicates That It Has Not Been Issued in Good Faith or for a Legitimate Purpose.**

Even if the Court accepts the IRS's purported legitimate purpose, the IRS may not conduct an unfettered "fishing expedition" through a taxpayer's records, but "must identify with some precision the documents it wishes to inspect." *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129, 131 (3d Cir. 1967); *United States v. Theodore,* 479 F.2d 749, 754-55 (4th Cir. 1973) (concluding that "summons directing [third-party accountant] to produce all of the returns and all of the work records relating to all of his clients for the years 1969-1971 is too broad and too vague to be enforced"). In testing for overbreadth, courts ask whether the summons described the requested documents in sufficient detail to inform the summoned party of exactly what is to be produced, *United States v. Abrahams*, 905 F.2d 1276, 1282 (9th Cir. 1990) *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997), and whether the summoned records are relevant to the inquiry, *Tax Liabilities of: John Does, All Unknown Employees of Boundary Waters Rest. v. United States*, 866 F.2d 1015, 1020-21 (8th Cir. 1989).

If the IRS is truly interested in policing virtual currency tax compliance and sending a message that it is focusing on this issue, it could easily accomplish these goals through less onerous

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

methods. For example, the summons could have contained a certain dollar threshold or volume of transactions. The IRS's failure to make any effort to limit the scope of the IRS Summons or otherwise tailor it to the stated goal of enforcing compliance with the tax laws are strong indicators that the IRS Summons has been issued in bad faith.

Moreover, the IRS Summons requests substantial personal and security information that has absolutely nothing to do with tax compliance. If the IRS truly intended to compare tax returns to Coinbase's records for tax compliance purposes, the only information it would need are the names and social security numbers of Coinbase's customers, and their trading activity (i.e., Bitcoin purchases and sales). Yet, the first category of information sought by the IRS Summons seeks profile information and security settings. This includes, among other things, the keys that a customer uses to access his or her Coinbase account, wallet or vault. Information concerning a customer's keys has no bearing on the issue of whether taxes have been paid on income related to virtual currency.

Information concerning a virtual currency customer's account is highly sensitive. If this security information is obtained by a hacker who uses the information to misappropriate virtual currency, there is no way for the true owner of that virtual currency to recover it. If the IRS were to obtain this information, which again, is unrelated to tax compliance, it could expose the government to huge potential liability from Coinbase customers if the keys are not properly safeguarded. This issue is particularly relevant here, as the federal government, including the IRS, have recently fallen prey to huge data breaches from both state-sponsored and independent hacker organizations.

From January 1, 2014, to May 2015, hackers breached the IRS's servers and stole over 700,000 social security numbers and other sensitive taxpayer information (including entire tax returns), and used this information to collect phony tax refunds of tens of millions of dollars. A report by the Treasury Inspector General concerning this breach found that potentially unauthorized users were successful in obtaining access to over 355,000 taxpayers' accounts. RFJN,

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order**
**Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

Ex. 2 (May 16, 2016 Report, at 7).[3] The report further determined that the IRS did not respond to this attack appropriately as it failed to identify all the victims of the hack and provide sufficient relief to all of the taxpayers impacted by the hack. RFJN, Ex. 2 (May 16, 2016 Report, at Highlights ("What TIGTA Found")). Only after this criticism, did the IRS attempt take the necessary remedial action.

    In response to the hack, Steve Weisman, a senior lecturer at Bentley University and an expert in identity theft, has stated, "[t]he IRS is frankly not doing enough to protect us. The very fact that it takes them so many months to even analyze the depth of the problem shows you that there are [sic] probably more identity theft that is going on."[4] Consistent with Mr. Weisman's comments, a March 2016 GAO audit of IRS cyber security uncovered IRS's failure to perform comprehensive tests and evaluations of its information security controls which if not corrected will leave tax payer data "unnecessarily vulnerable" to inappropriate use. GAO audit also says the IRS claimed it had corrected previously identified control weaknesses in 28 cases, but in nine of those instances, auditors determined they were not "effectively corrected."[5] Virtual Currency account information is more sensitive than a social security number, as it allows a hacker to steal virtual currency without leaving any trail. The IRS's inability to guard social security numbers and other sensitive taxpayer data demonstrates that the IRS is not ready to secure highly sensitive electronic data like virtual currency account access information.

---

[3] The IRS is not the only federal government agency that has been the subject of a massive data breach. In March 2014, at the Office of Personnel Management, hackers compromised over 21 million personnel records for current and former federal employees, many of whom worked with classified employees holding sensitive jobs with law enforcement and intelligence. The hackers were in the government system for 343 days before they were detected. Patricia Zengerle & Megan Cassella, *Millions More Americans Hit by Government Personnel Data Hack*, Reuters, July 9, 2015, *available at* http://www.reuters.com/article/us-cybersecurity-usa-idUSKCN0PJ2M420150709.

[4] *See Massive IRS Data Breach Much Bigger Than First Thought*, CBS News, Feb. 29, 2016, *available at* http://www.cbsnews.com/news/irs-identity-theft-online-hackers-social-security-number-get-transcript/.

[5] U.S. Government Accountability Report, GAO-16-398, *Information Security: IRS Needs to Further Improve Controls Over Financial and Taxpayer Data* (Mar. 2016), *available at* http://www.gao.gov/assets/680/676097.pdf. RFJN, Ex. 3.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

Moreover, allowing the government to have the information necessary to access virtual currency accounts can create a temptation for malfeasance. Recently, a DEA special agent was convicted of extortion and money laundering after he admitted to stealing over 1,200 Bitcoins (valued today at approximately $920,000) from a suspect during a criminal investigation.[6] A Secret Service agent was also complicit in this virtual currency scheme and he has pled guilty to diverting over $800,000 worth of Bitcoins to his personal account.[7] Movant is, of course, not suggesting that government employees are generally untrustworthy. However, the potential for wrongful conduct that will exist if the government has security and account access information that is likely worth hundreds of millions of dollars must be considered.

Perhaps most importantly, the IRS's desire to obtain personal information unrelated to tax compliance from over one million America citizens who are Coinbase users clearly reflects bad faith and an abuse of process. This Court should not allow the IRS to access sensitive personal data under the pretext of monitoring tax compliance. It is hard to conceive of a good faith motive for the IRS to seek personal information that has nothing to do with tax compliance. For example, the sixth category of information sought by the IRS Summons seeks all correspondence between a Coinbase customer and Coinbase pertaining to the customer's account/wallet/vault. Why would correspondence between Coinbase and its customers yield any information concerning tax compliance? For example, Movant had multiple communications with Coinbase concerning customer service and issues (Berns Decl., ¶ 4), which, of course, have absolutely nothing to do with any tax issue.

### 3. The IRS Summons Is Improper if It Is Designed to Seek Information for Research, as Opposed to Enforcement, Purposes.

As the IRS did not dispute the TIGTA Report's conclusion in September 2016 that it did not have a method for gathering the necessary data to analyze the risk and scope of non-compliance

---

[6] Reuters, *Corrupt Silk Road DEA Agent Carl Force Gets Over 6 Years in Prison,* NBC News, Oct. 19, 2015, *available at* http://www.nbcnews.com/tech/tech-news/corrupt-silk-road-dea-agent-carl-force-gets-over-6-n447466.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1    with the tax code with respect to virtual currency, how could enforcement possibly be the goal of a

2    summons issued only two months later for the mountain of data that it seeks from Coinbase?

3    Rather than enforcement, it appears that the IRS is trying to use a John Doe summons to gather

4    data for research purposes in response to the TIGTA Report's criticism. This is improper in the

5    absence of a specific investigation regarding tax compliance. A summons issued under Section

6    7602 may not be used solely for research purposes under Section 7601.[8] *See United States v.*

7    *Humble Oil & Refining Co.,* 488 F.2d 953, 962-63 (5th Cir. 1974), *vacated and remanded,* 421

8    U.S. 943 (1975), *aff'd. per curiam,* 518 F.2d 747 (5th Cir. 1975) ("[W]e hold that the Internal

9    Revenue Service is not empowered by section 7602 to issue a summons in aid of its section 7601

10    research projects or inquiries, absent an investigation of taxpayers or individuals and corporations

11    from whom information is sought."). The Petition does not allege any particular investigation for

12    which the IRS is seeking the information in the IRS Summons.

13         In fact, the IRS's assertion that the requested information is needed to "examine the income

14    tax returns filed by those U.S. taxpayers to determine whether they have properly reported any

15    income attributable to virtual currencies" (Utzke Decl., ¶ 57) is undoubtedly a pretext, as the

16    Commissioner of the IRS has repeatedly stated that the IRS does not have sufficient funding to

17    pursue enforcement efforts. *See, e.g.,* October 23, 2015 Prepared Remarks of Commissioner John

18    A. Koskinen Before The Council for Electronic Revenue Communication Advancement ("Since

19    2010, the IRS has suffered deep, dramatic funding reductions that have undermined our ability to

20    provide taxpayers with top quality service and ensure compliance with the tax laws.") (RFJN, Ex.

21    4). *See also* April 4, 2016 report from Center on Budget and Policy Priorities, entitled "IRS

22    Funding Cuts Compromise Taxpayer Service and Weaken Enforcement," at 6 ("As a result of cuts,

23    the IRS is conducting fewer audits overall and fewer audits of high-income taxpayers and

24

25

---

26    [7] *Reuters*, *Ex-Secret Service Agent Admits Stealing $820K in Bitcoin in Silk Road Case,* NBC News, Aug. 31, 2015, *available at* http://www.nbcnews.com/tech/internet/ex-secret-service-agent-admits-stealing-820k-bitcoin-silk-road-n419186.

27

28    [8] 26 U.S.C. § 7601(a) provides: "The Secretary shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

businesses."), a copy of which is attached as Exhibit 2 to the Lum Declaration. It is hard to believe that the current budget-strained IRS is going to review three years of tax returns for over one million taxpayers to determine if they properly paid taxes with respect to their virtual currency transactions.

Moreover, based on the current dollar volume of virtual currency transactions, it seems unlikely that the IRS would devote a substantial portion of its resources to enforcement of virtual currency tax obligations. According to the IRS, the 2015 transactional value of Bitcoin was approximately $10 billion. Utzke Decl., ¶ 27. Unpaid taxes on any portion of that amount which reflects taxable gains in the trading or use of Bitcoin would pale in comparison to the total amount of U.S. tax revenue, which in 2014 was approximately $1.7 trillion,[9] and the annual Tax Gap, which is approximately $387 billion. It strains credulity that the financially-strapped IRS is going to spend substantial resources on reviewing the trading data and tax return of Coinbase customers, when that is not likely to yield tax revenue that would justify that expense.

> **4.     The Petition's Meager Foundation for the IRS Summons Seeking the Identity and Three Years of Transactions for over One Million Taxpayers Reflects That the IRS Does Not Have a Legitimate Purpose.**

While the *ex parte* showing required for the issuance of a John Doe summons is relatively minimal, as set forth above, the fact that the IRS can meet that burden does not mean that the IRS will prevail once the summons is challenged. Here, the IRS has provided very few facts in support of its wide-ranging summons.

> **a.     The IRS Has Provided Only Three Instances of Taxpayers Using Bitcoin to Evade Taxes, and the Minimal Details it Offers Concerning Those Circumstances Does Not Justify the Broad Scope of the IRS Summons.**

---

pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed."

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

Although the IRS Agent upon whose declaration the Petition was based has worked in the Offshore Compliance Initiative program and has been investigating tax non-compliance in connection with virtual currency for more than three years, the Agent states that he is aware of only three taxpayers who have used virtual currency to allegedly evade taxes. Utzke Decl., ¶¶ 2, 31-34. Even for these taxpayers, the Agent does not provide any meaningful details.

The Agent states that two of the taxpayers were corporate entities that improperly treated Bitcoin transactions as business expenses, but he does not identify the dollar amount of these transactions, the dates of these transactions, or the parties to these transactions. Utzke Decl., ¶ 34. Nor does the Agent explain why this conduct by businesses should permit the IRS to seek information from Coinbase concerning individuals. Further, treating non-business purchases as business expenses is hardly unique to virtual currency. Through its audits and investigations, the IRS has undoubtedly discovered many individuals who have improperly treated personal expenses as business expenses. However, that would not justify the IRS Summons. For example, if the IRS provided evidence of two taxpayers who had purchased items from Amazon for personal use and declared them to be business expenses, it would certainly not be justified in issuing a John Doe summons to Amazon seeking its customer lists and records concerning every transaction for all of Amazon's customers. That conduct would clearly be abuse of process.

The other instance identified by the Agent concerns a taxpayer who had previously used other methods to avoid taxes and then used Bitcoin as part of a tax evasion scheme. Utzke Decl., ¶¶ 30-33. Again, to the extent that the IRS is looking for repeat tax evaders, it could have easily limited the subpoena in that regard. For example, it could have provided Coinbase with a list of social security numbers for known tax evaders and only sought information concerning those individuals. Yet, the IRS made no attempt to do that.

### b.     The Other Information Provided by the IRS Is Far Too General to Support the IRS Summons.

The general nature of the IRS's other supporting information only serves to highlight the

---

[9] *See* Tax Policy Center of the Urban Institute & Brookings Institution, *Amount of Revenue by Source*, http://www.taxpolicycenter.org/statistics/amount-revenue-source.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1    fact that it has no legitimate purpose for the summons. These include (1) a Huffington Post article

2    from 2013 where the head of "an organization that provides unpaid first aid services at large

3    libertarian political rallies" made an unverified statement that the organization did not plan to pay

4    taxes on Bitcoin donations (Utzke Decl., ¶ 36); (2) an IRS study of data from 6-8 years ago that

5    stands for the unremarkable principal that taxes are more likely to be paid with respect to

6    transactions that are reported to the IRS (Utzke Decl., ¶ 37); and (3) the results of a Google search

7    concerning avoiding taxes with Bitcoin (Utzke Decl., ¶ 55). From these meager "facts," the IRS

8    seeks to have Coinbase disclose the identities of all of its U.S. customers and all of the data

9    concerning every transaction conducted by those customers for a three-year period.[10] Clearly, this

10   calls the IRS's motives into question and signals abuse of process.

11          The cases cited by the IRS in its petition reveal a stark contrast between the particularized

12   information concerning the highly likely tax avoidance conduct of the taxpayers that are the subject

13   of a John Doe summons on which the IRS typically relies to justify the issuance of a John Doe

14   summons and the inability of the IRS here to explain how any significant number of Coinbase

15   customers have or are likely to violate the tax laws. For example, in *United States v. Kersting*, 891

16   F.2d 1407, 1408 (9th Cir. 1989) (IRS Mem. at 14), the IRS was investigating the individual on

17   whom it served the John Doe subpoena, Kersting, for "promot[ing] tax shelters of questionable

18   validity." Additionally, a court had already determined that one of Kersting's tax shelter products

19   was "abusive of the tax code." *Id.* at 1409. Thus, in that circumstance, the IRS had a strong reason

20   to believe that all of Kersting's clients, whose identities it was seeking through the John Doe

21   summons, had not complied with the tax laws.

22          Similarly, in *United States v. Ritchie*, 15 F. 3d 592 (6th Cir. 1994) (IRS Mem. at 14), the

23   IRS issued a John Doe summons to a law firm that had filed currency transaction reports for

24   criminal defense clients that had paid for legal services with more than $10,000 in cash, but had

25   failed to identify those clients. As explained by the Sixth Circuit in affirming the denial of

26

---

27   [10] Between January 1, 2013, and January 3, 2016, there were approximately 91 million transactions
     with respect to Bitcoins. *See* https://blockchain.info/charts/n-transactions-
28   total?timespan=all&showDataPoints=true#.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

objections to the summons, "the suspect act is paying over $10,000 in cash *for anything*." *Id.* at 601 (emphasis in original). Indeed, the Supreme Court has held that "[The IRS] has a legitimate interest in large or unusual financial transactions, especially those involving cash. The reasons for that interest are too numerous and too obvious to catalog." *Bisceglia*, 420 U.S. at 149.

The facts that virtual currency is one of many possible devices that a nefarious taxpayer can use to conceal taxable gains from the IRS, and that the IRS has identified 3 individuals who used Bitcoin to avoid paying certain taxes, pale in comparison to an illegal tax shelter and large cash transactions that the government has already deemed to be suspicious. In those latter circumstances, the IRS sought the identification of a narrow class of persons that had engaged in suspect activity. Here, the IRS is seeking the identification of over a million individuals, and substantial transactional data, without any showing of suspect activity by any of these individuals, let alone a likelihood that any significant number of them engaged in suspect activity.

### 5.     The IRS Has Previously Been Accused of Abusing Its Power to Improperly Further the Government's Political Agenda.

While the Court need not determine the IRS's true motive in order to find abuse of process based upon bad faith, it is hardly far-fetched to conclude that the IRS has an ulterior motive for pursuing the IRS Summons. As this Court may be aware, the IRS recently used its power to retaliate against anti-administration political associations and political speech. In 2013, the IRS revealed that it had selected political groups applying for tax-exempt status, "Tea Party", for intensive scrutiny based on their names or political themes, which triggered widespread condemnation of the agency. Multiple investigations of the IRS by the FBI and the U.S. Attorney General are pending, while lawsuits filed against the IRS were recently reinstated by the D.C. Circuit. *See True the Vote, Inc. v. Internal Revenue Serv.*, 831 F.3d 551 (D.C. Cir. 2016).

It is not a stretch to conclude that the government is similarly using the IRS's John Doe summons authority to harass taxpayers who use virtual currencies, as politicians and financial leaders have suggested an anti-virtual currency bias by the government. For example, Jamie Dimon, CEO of JPMorgan Chase, stated: "Virtual currency, where it's called a bitcoin vs. a U.S. dollar, that's going to be stopped. No government will ever support a virtual currency that goes

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

around borders and doesn't have the same controls. It's not going to happen."[11] Similarly, Sen. Joe

Manchin (D-W. Va.), a former member of the Senate banking committee, stated: "If the feds can't

get their hands around [Bitcoin] to where they can secure it, then I would be very leery of investing

in it or trading with it or buying with it."[12]

**D.**     **If the Court Does Not Quash the IRS Summons, It Should Issue an**
          **Appropriate Protective Order.**

**1.**    **Movant Has Readily Demonstrated Good Cause.**

A party seeking a protective order bears the burden of proving "good cause," which

requires a showing "that specific prejudice or harm will result" if the protective order is not

granted. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir.

2011); *Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1063 (9th Cir. 2004). *See also Skellerup Indus. Ltd.*

*v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) (confirming that a court should grant

a protective order "when the moving party establishes 'good cause' for the order" and justice

requires it). "The injury shown, however, need be no more than 'embarrassment'; thus, a party

need not establish a monetizable injury." *Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000).

As discussed above, the IRS has no legitimate purpose in seeking the requested documents

and information concerning Movant. Nor does the IRS have a legitimate purpose for seeking the

identification of Coinbase's customers or all data and information concerning those customers for a

three-year period. Even if the IRS had not engaged in abuse of process and was acting in good

faith, there is no basis for seeking information from all of Coinbase's customers, regardless of the

size and volume of their virtual currency activity, and the categories of information sought by the

IRS Summons are not related to the IRS's stated goal of enforcing compliance with the tax code.

Finally, the privacy interests of Movant and all of Coinbase's customers substantially outweigh the

IRS's interest in enforcement where, as discussed above, the IRS has made no showing that there is

---

[11] Stephen Gandel, *Jamie Dimon: Virtual Currency Will Be Stopped*, Fortune, Nov. 4, 2015, *available at* http://fortune.com/2015/11/04/jamie-dimon-virtual-currency-bitcoin/.

[12] Brian Fung, *Last Month, Sen. Joe Manchin Wanted to Ban Bitcoin. Now, He's Not So Sure*, The Washington Post, Mar. 26, 2014, *available at* https://www.washingtonpost.com/news/the-

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order**
**Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1   a significant risk that a meaningful portion of Coinbase's customers have failed to pay taxes on

2   income related to virtual currency transaction. Accordingly, the Court should issue an appropriate

3   Protective Order that only allows the IRS access to information that is relevant to a legitimate

4   enforcement purpose from customers whom the IRS can demonstrate engaged in behavior that

5   evidences potential tax evasion. The Court should require the IRS to make a factual showing that is

6   more than the mere fact that a taxpayer transacted in virtual currency.

**E.      If the Court Does Not Quash the Subpoena or Issue a Protective Order, Movant Is Entitled to Conduct Limited Discovery and Then an Evidentiary Hearing Concerning the IRS's Bad Faith.**

**1.      Movant Has Provided Specific Facts That Raise Doubts Concerning the IRS's Good Faith in Issuing the IRS Summons.**

12          A taxpayer, who has "[made] a sufficient showing of bad faith on the Government's part,

13   … is entitled to a limited evidentiary hearing." *United States v. Samuels, Kramer & Co.*, 712

14   F.2d 1342, 1346-47 (9th Cir. 1983). To make a showing of bad faith, the taxpayer must introduce

15   "some evidence" to support his allegations. *United States v. Church of Scientology of Cal.*, 520

16   F.2d 818, 824 (9th Cir. 1975) (quoting *United States v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970)).

17   The burden is not strict, as the Ninth Circuit has explained:

> A taxpayer must answer the Government's prima facie case "through responsive pleadings, supported by affidavits, that allege *specific facts* in rebuttal." [*U.S. v. Kis*, 658 F.2d 526, 539 (7th Cir. 1981)] (emphasis in original). The facts, however, need only raise "sufficient doubt" about the Government's purposes in seeking enforcement of a summons. *Church of Scientology,* 520 F.2d at 825. The taxpayer must thus allege facts "from which a court might *infer* a *possibility* of some wrongful conduct by the Government." *Kis,* 658 F.2d at 540 (emphasis in original). This implication alone is enough to trigger a limited evidentiary hearing. At this stage, the taxpayer need not actually be able to prove the Government's lack of good faith. *See id.*

*Samuels*, 712 F.2d at 1347–48 (emphasis in original); *see also Church of Scientology*, 520 F.2d at

825 (ordering limited evidentiary hearing where bad faith allegations were "thin"). "On the basis of

evidence revealed at the limited evidentiary hearing, the court must determine whether the taxpayer

switch/wp/2014/03/26/last-month-sen-joe-manchin-wanted-to-ban-bitcoin-now-hes-not-so-sure/?utm_term=.e2278c733b81.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

should be permitted further discovery to uncover facts to support the assertion of bad faith."

*Samuels*, 712 F.2d at 1347; *Kis*, 658 F.2d at 542 ("If the court cannot decide the merits of the enforcement petition at the hearing, then further discovery would clearly be helpful to the ultimate resolution of the case. The district court should therefore permit some discovery at this stage.").

As set forth above, Movant has provided specific facts that, at the very least, raise serious doubts concerning the IRS's good faith in issuing the IRS Summons, including 1) that the Treasury Department has recommended that the IRS should clarify its vague virtual currency guidance and employ resources to educate taxpayers as to their obligations regarding the taxation of virtual currency; 2) that the IRS has failed for over two years to clarify its vague virtual currency guidance, even in response to the Treasury Department's recommendations, which the IRS has agreed are valid; 3) the IRS's factual showing to support the request for the identification of, and three years of transactional data for, Coinbase's customers is exceedingly weak and pales in comparison to the factual showings made by the IRS in connection with other John Doe summonses; 4) the IRS's only real basis for seeking the information in the IRS Summons is that Coinbase's customers have transacted in virtual currency; 5) the IRS Summons is extremely overbroad and not designed to elicit information concerning a legitimate investigative purpose; 6) the IRS does not have the resources or a program in place that would allow it to effectively analyze the data it is seeking; 7) the IRS has claimed that it is seeking information from Coinbase in connection with tax compliance efforts, when it seems clear that the IRS is improperly using the John Does summons procedure to obtain data for research purposes; and 8) the IRS has previously used its power for improper purposes. Thus, at the absolute minimum, this Court should allow Movant to take limited discovery regarding the IRS's bad faith and then set a limited evidentiary hearing. That discovery should include the deposition of the IRS Agent who filed a declaration in support of the Petition and the IRS's production of the documents that underlie that declaration.

## IV.    CONCLUSION

Based on the foregoing, Movant respectfully requests that the Court grant his motion to intervene in this proceeding. Movant further requests that the Court quash the IRS Summons or, in

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

the alternative, issue an appropriate protective order, or, in the alternative, allow Movant to pursue reasonable discovery and then conduct an evidentiary hearing concerning the IRS's bad faith.

Dated: December 13, 2016                    /s/ Lee A. Weiss
                                            Lee A. Weiss (SBN 297834)
                                            lweiss@law111.com
                                            **BERNS WEISS LLP**
                                            585 Stewart Avenue, Suite L-20
                                            Garden City, NY 11530
                                            Telephone:    (516) 222-2900
                                            Facsimile:    (818) 936-0232

                                            Albert G. Lum (SBN 259053)
                                            alum@law111.com
                                            Emmanuel Rayes (SBN 304934)
                                            erayes@law111.com
                                            **BERNS WEISS LLP**
                                            6800 Owensmouth Avenue, Suite 310
                                            Canoga Park, CA 91303
                                            Telephone:    (818) 961-2000
                                            Facsimile:    (818) 936-0232

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**