Lee A. Weiss (SBN 297834)
    lweiss@law111.com
**BERNS WEISS LLP**
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Telephone:    (516) 222-2900
Facsimile:    (818) 936-0232

Albert G. Lum (SBN 259053)
    alum@law111.com
Emmanuel Rayes (SBN 304934)
    erayes@law111.com
**BERNS WEISS LLP**
6800 Owensmouth Avenue, Suite 310
Canoga Park, CA 91303
Telephone:    (818) 961-2000
Facsimile:    (818) 936-0232

Attorneys for Proposed Intervenor, Jeffrey K. Berns

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE TAX LIABILITIES OF: | Case No.: 3:16-cv-06658-JSC |
| JOHN DOES, United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21. | **DECLARATION OF ALBERT G. LUM IN SUPPORT OF MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND PERMITTING LIMITED DISCOVERY** |
| | Date:       January 19, 2017<br>Time:       9:00 a.m.<br>Courtroom:  F, 15th Floor<br>Judge:     Hon. Jacqueline Scott Corley |

Case No.: 3:16-cv-06658-JSC
**Lum Decl. i/s/o Motion to Intervene, to Quash Summons, or for Protective Order, or
for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

I, Albert G. Lum, declare:

1.     I am an attorney duly licensed to practice law before the courts of the State of California. I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify thereto.  I am one of the counsel of record for Movant-Proposed Intervenor Jeffrey K. Berns ("Movant").

2.     I submit this declaration in support of Movant's Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of a proposed Summons, which was previously filed in this proceeding on November 17, 2016, as Exhibit B to the Declaration of Senior IRS Revenue Agent David Utzke, filed in support of the Petition (Dkt. No. 2-6).

4.  Attached hereto as **Exhibit 2** is a true and correct copy of a report from the Center on Budget and Policy Priorities, entitled "IRS Funding Cuts Compromise Taxpayer Service and Weaken Enforcement," dated April 4, 2016, which is available at http://www.cbpp.org/sites/default/files/atoms/files/6-25-14tax.pdf.

I declare under penalty of perjury, under the laws of the State of California and the United States, that the foregoing is true and correct.  Executed this 13th day of December, 2016, in Canoga Park, California.

Albert G. Lum

# EXHIBIT 1



# Summons

In the matter of   Tax Liability of John Does*

Internal Revenue Service (Division):   Large Business & International Division

Industry/Area (name or number):   Withholding & International Individual Compliance

Periods:   Years ending 12/31/2013 through 12/31/2015

## The Commissioner of Internal Revenue

**To:**   Coinbase, Inc.

**At:**

You are hereby summoned and required to appear before   David J. Utzke, Revenue Agent or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See attachment

* "John Does" are United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21.

---

**Do not write in this space**

---

**Business address and telephone number of IRS officer before whom you are to appear:**

1818 East Southern Avenue, Mesa, AZ 85204 / 626-927-1237

**Place and time for appearance at**   Internal Revenue Service, 450 Golden Gate Avenue, San Francisco CA  94102

**IRS**

on the _____ day of _____, _____ at _____ o'clock _____ m.
*(year)*

**Issued under authority of the Internal Revenue Code this** _____ **day of** _____, _____
*(year)*

Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

_____
Signature of issuing officer

Program Manager
Title

_____
Signature of approving officer *(if applicable)*

Title

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

**Original** — to be kept by IRS



# Service of Summons, Notice and Recordkeeper Certificates

**(Pursuant to section 7603, Internal Revenue Code)**

I certify that I served the summons shown on the front of this form on:

| Date | Time |
|------|------|
| TBD | TBD |

**How Summons Was Served**

1. ☐ I certify that I handed a copy of the summons, which contained the attestation required by § 7603, to the person to whom it was directed.

2. ☐ I certify that I left a copy of the summons, which contained the attestation required by § 7603, at the last and usual place of abode of the person to whom it was directed. I left the copy with the following person (if any): _____

3. ☒ I certify that I sent a copy of the summons, which contained the attestation required by § 7603, by certified or registered mail to the last known address of the person to whom it was directed, that person being a third-party recordkeeper within the meaning of § 7603(b). I sent the summons to the following address: Coinbase, Inc.

| Signature | Title |
|-----------|-------|
|  | Revenue Agent |

4. This certificate is made to show compliance with IRC Section 7609. This certificate does not apply to summonses served on any officer or employee of the person to whose liability the summons relates nor to summonses in aid of collection, to determine the identity of a person having a numbered account or similar arrangement, or to determine whether or not records of the business transactions or affairs of an identified person have been made or kept.

I certify that, within 3 days of serving the summons, I gave notice (Part D of Form 2039) to the person named below on the date and in the manner indicated.

Date of giving Notice: _____     Time: _____

Name of Noticee: _____

Address of Noticee (if mailed): _____

**How Notice Was Given**

☐ I gave notice by certified or registered mail to the last known address of the noticee.

☐ I left the notice at the last and usual place of abode of the noticee. I left the copy with the following person (if any).

☐ I gave notice by handing it to the noticee.

☐ In the absence of a last known address of the noticee, I left the notice with the person summoned.

☒ No notice is required.

| Signature | Title |
|-----------|-------|
|  | Revenue Agent |

I certify that the period prescribed for beginning a proceeding to quash this summons has expired and that no such proceeding was instituted or that the noticee consents to the examination.

| Signature | Title |
|-----------|-------|
|  | Revenue Agent |

Form **2039** (Rev. 10-2010)



# Summons

In the matter of <u>Tax Liability of John Does*</u>

Internal Revenue Service (Division): <u>Large Business & International Division</u>

Industry/Area (name or number): <u>Withholding & International Individual Compliance</u>

Periods: <u>Years ending 12/31/2013 through 12/31/2015</u>

## The Commissioner of Internal Revenue

**To:** <u>Coinbase, Inc.</u>

**At:** <u> </u>

You are hereby summoned and required to appear before <u>David J. Utzke, Revenue Agent or Designee</u>
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See attachment

\* "John Does" are United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21.

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

<u> </u>                                          <u>Revenue Agent</u>
Signature of IRS officer serving the summons                Title

**Business address and telephone number of IRS officer before whom you are to appear:**

1818 East Southern Avenue, Mesa, AZ 85204 / 626-927-1237

**Place and time for appearance at** <u>Internal Revenue Service, 450 Golden Gate Avenue, San Francisco CA 94102</u>

on the _____ day of _____, _____ at _____ o'clock _____ m.
                                        *(year)*

**Issued under authority of the Internal Revenue Code this** _____ **day of** _____, _____
                                                                                    *(year)*

<u> </u>                                          <u>Program Manager</u>
Signature of issuing officer                              Title

<u> </u>                                          <u> </u>
Signature of approving officer *(if applicable)*            Title

Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

**Part A** - to be given to person summoned

# Provisions of the Internal Revenue Code

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -

    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

    (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

    (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties. -

    (1) General Notice. - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

    (2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

    (3) Exceptions. - This subsection shall not apply-

        (A) to any contact which the taxpayer has authorized,

        (B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

        (C) with respect to any pending criminal investigation.

(d) No administrative summons when there is Justice Department referral.-

    (1) Limitation of authority. - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

    (2) Justice Department referral in effect. - For purposes of this subsection-

        (A) In general. - A Justice Department referral is in effect with respect to any person if-

            (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

            (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

        (B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

            (i) the Attorney General notifies the Secretary, in writing, that -

                (I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

                (II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

                (III) he will discontinue such a grand jury investigation.

            (ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

            (iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii).

    (3) Taxable years, etc., treated separately. - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes.

\* \* \* \* \*

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers. -

    (1) In general. - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper.

    (2) Third party record keeper. - For purposes of paragraph (1), the term *third-party recordkeeper* means -

        (A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A));

        (B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681 a(f));

        (C) Any person extending credit through the use of credit cards or similar devices;

        (D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4));

        (E) any attorney;

        (F) any accountant;

        (G) any barter exchange (as defined in section 6045(c)(3));

        (H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof;

        (I) any enrolled agent; and

        (J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(iii) to which source code relates.

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement. - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or Commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

\* \* \* \* \*

## Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall be not less than 10 days from the date of the summons.

## Sec. 7610. Fees and costs for witnesses

(a) In general. - The Secretary shall by regulations establish the rates and conditions under which payment may be made of -

    (1) fees and mileage to persons who are summoned to appear before the Secretary, and

    (2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if -

    (1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

    (2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such.

(c) Summons to which section applies. - This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602.

## Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

# Notice of Payment Information for Recipients of IRS Summons

If you are a third-party recipient of a summons, you may be entitled to receive payment for certain costs directly incurred which are reasonably necessary to search for, reproduce, or transport records in order to comply with a summons.

This payment is made only at the rates established by the Internal Revenue Service to certain persons served with a summons to produce records or information in which the taxpayer does not have an ownership interest. The taxpayer to whose liability the summons relates and the taxpayer's officer, employee, agent, accountant, or attorney are not entitled to this payment. No payment will be made for any costs which you have charged or billed to other persons.

The rate for search costs is limited to the total amount of personnel time spent locating and retrieving documents or information requested by the summons. Specific salaries of such persons may not be included in search costs. In addition, search costs do not include salaries, fees, or similar costs for analysis of material or for managerial or legal advice, expertise, research, or time spent for any of these activities. If itemized separately, search costs may include the actual costs of extracting information stored by computer in the format in which it is normally produced, based on computer time and necessary supplies. Time for computer search may be paid.

Rates for reproduction costs for making copies or duplicates of summoned documents, transcripts, and other similar material may be paid at the allowed rates. Photographs, films, and other material are reimbursed at cost.

The rate for transportation costs is the same as the actual cost necessary to transport personnel to locate and retrieve summoned records or information, or costs incurred solely by the need to transport the summoned material to the place of examination.

In addition to payment for search, reproduction, and transportation costs, persons who appear before an Internal Revenue Service officer in response to a summons may request payment for authorized witness fees and mileage fees. You may make this request by contacting the Internal Revenue Service officer or by claiming these costs separately on the itemized bill or invoice as explained below.

## Instructions for requesting payment

After the summons is served, you should keep an accurate record of personnel search time, computer costs, number of reproductions made, and transportation costs. Upon satisfactory compliance, you may submit an itemized bill or invoice to the Internal Revenue Service officer before whom you were summoned to appear, either in person or by mail to the address furnished by the Internal Revenue Service officer. Please write on the itemized bill or invoice the name of the taxpayer to whose liability the summons relates.

If you wish, Form 6863, Invoice and Authorization for Payment of Administrative Summons Expenses, may be used to request payment for search, reproduction, and transportation costs. Standard Form 1157, Claims for Witness Attendance Fees, Travel, and Miscellaneous Expenses, may be used to request payment for authorized witness fees and mileage fees. These forms are available from the Internal Revenue Service officer who issued the summons.

If you have any questions about the payment, please contact the Internal Revenue Service officer before whom you were summoned to appear.

Anyone submitting false claims for payment is subject to possible criminal prosecution.



Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

**Part B —** to be given to person summoned

# Sec. 7609. Special procedures for third-party summonses.

**(a) Notice-**

(1) In general. - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash such summons.

(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

**(b) Right to intervene; right to proceeding to quash.-**

(1) Intervention. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) Proceeding to quash. -

(A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

(B) Requirement of notice to person summoned and to Secretary. - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a) (1 .

(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

**(c) Summons to which section applies.-**

(1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

(2) Exceptions. - This section shall not apply to any summons

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;

(C) issued solely to determine the identify of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);

(D) issued in aid of the collection of-

(i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause; or

(E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and

(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

(3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g).

(4) Records. - For purposes of this section, the term records includes books, papers, and other data.

(d) Restriction on examination of records. - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -

(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or

(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.

**(e) Suspension of Statute of Limitations. -**

(1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

(2) Suspension after 6 months of service of summons. - In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-

(A) beginning on the date which is 6 months after the service of such summons, and

(B) ending with the final resolution of such response.

**(f) Additional requirements in the case of a John Doe summons. -**

Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that -

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

**(g) Special exception for certain summonses. -**

A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

**(h) Jurisdiction of district court; etc. -**

(1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.

(2) Special rule for proceedings under subsections (f) and (g).- The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

**(i) Duty of summoned party. -**

(1) Recordkeeper must assemble records and be prepared to produce records.- On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined.

(2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.

(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure.

(4) Notice of suspension of statute of limitations in the case of a John Doe summons. - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f).

**(j) Use of summons not required. -**

Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602.



# Summons

In the matter of __Tax Liability of John Does*__

Internal Revenue Service (Division): __Large Business & International Division__

Industry/Area (name or number): __Withholding & International Individual Compliance__

Periods: __Years ending 12/31/2013 through 12/31/2015__

## The Commissioner of Internal Revenue

**To:** __Coinbase, Inc.__

**At:** _____

You are hereby summoned and required to appear before __David J. Utzke, Revenue Agent or Designee__ an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See attachment

* "John Does" are United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21.

## Do not write in this space

**Business address and telephone number of IRS officer before whom you are to appear:**

1818 East Southern Avenue, Mesa, AZ 85204 / 626-927-1237

**Place and time for appearance at** __Internal Revenue Service, 450 Golden Gate Avenue, San Francisco CA  94102__

**IRS**

Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

on the _____ day of _____ , _____ at _____ o'clock _____ m.
_(year)_

**Issued under authority of the Internal Revenue Code this** _____ **day of** _____ , _____
_(year)_

_____          Program Manager
Signature of issuing officer                              Title

_____          _____
Signature of approving officer *(if applicable)*        Title

**Part C —** to be given to noticee

# Provisions of the Internal Revenue Code

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -

   (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

   (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties. -

   (1) General Notice. - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

   (2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

   (3) Exceptions. - This subsection shall not apply-

     (A) to any contact which the taxpayer has authorized,

     (B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

     (C) with respect to any pending criminal investigation.

(d) No administrative summons when there is Justice Department referral.-

   (1) Limitation of authority. - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

   (2) Justice Department referral in effect. - For purposes of this subsection-

     (A) In general. - A Justice Department referral is in effect with respect to any person if-

       (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

       (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

     (B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

       (i) the Attorney General notifies the Secretary, in writing, that -

         (I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

         (II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

         (III) he will discontinue such a grand jury investigation.

       (ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

       (iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii).

   (3) Taxable years, etc., treated separately. - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

---

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes.

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers. -

   (1) In general. - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper.

   (2) Third party record keeper. - For purposes of paragraph (1), the term *third-party recordkeeper* means -

     (A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A));

     (B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681 a(f));

     (C) any person extending credit through the use of credit cards or similar devices;

     (D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4));

     (E) any attorney;

     (F) any accountant;

     (G) any barter exchange (as defined in section 6045(c)(3));

     (H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof;

     (I) any enrolled agent; and

     (J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(iii) to which source code relates.

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement. - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or Commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

✶   ✶   ✶   ✶

## Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall be not less than 10 days from the date of the summons.

## Sec. 7610. Fees and costs for witnesses

(a) In general. - The Secretary shall by regulations establish the rates and conditions under which payment may be made of -

   (1) fees and mileage to persons who are summoned to appear before the Secretary, and

   (2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if -

   (1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

   (2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such.

(c) Summons to which section applies. - This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602.

## Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

✶   ✶   ✶   ✶   ✶

Form **2039** (Rev. 10-2010)

**Address:**

---

Enclosed is a copy of a summons served by the IRS to examine records made or kept by, or to request testimony from, the person summoned. If you object to the summons, you are permitted to file a lawsuit in the United States district court in the form of a petition to quash the summons in order to contest the merits of the summons.

If you are the taxpayer, see important information below on the suspensions of your periods of limitation under I.R.C. section 7609(e)(1) and (e)(2).

## General Directions

1. You must file your petition to quash in the United States district court for the district where the person summoned resides or is found.

2. You must file your petition within 20 days from the date of this notice and pay a filing fee as may be required by the clerk of the court.

3. You must comply with the Federal Rules of Civil Procedure and local rules of the United States district court.

## Instructions for Preparing Petition to Quash

1. Entitle your petition "Petition to Quash Summons."

2. Name the person or entity to whom this notice is directed as the petitioner.

3. Name the United States as the respondent.

4. State the basis for the court's jurisdiction, as required by Federal Rule of Civil Procedure. See Internal Revenue Code Section 7609(h).

5. State the name and address of the person or entity to whom this notice is directed and state that the records or testimony sought by the summons relate to that person or entity.

6. Identify and attach a copy of the summons.

7. State in detail every legal argument supporting the relief requested in your petition. See Federal Rules of Civil Procedure. Note that in some courts you may be required to support your request for relief by a sworn declaration or affidavit supporting any issue you wish to contest.

8. Your petition must be signed as required by Federal Rule of Civil Procedure 11.

9. Your petition must be served upon the appropriate parties, including the United States, as required by Federal Rule of Civil Procedure 4.

10. At the same time you file your petition with the court, you must mail a copy of your petition by certified or registered mail to the person summoned and to the IRS. Mail the copy for the IRS to the officer whose name and address are shown on the face of this summons. See 7609(b)(2)(B).

The court will decide whether the person summoned should be required to comply with the summons request.

## Suspension of Periods of Limitation

If you are the taxpayer being examined/investigated by this summons and you file a petition to quash the summons (or if you intervene in any suit concerning the enforcement of this summons), your periods of limitation for assessment of tax liabilities and for criminal prosecutions will be suspended pursuant to I.R.C. section 7609(e)(1) for the tax periods to which the summons relates. Such suspension will be effective while any proceeding (or appeal) with respect to the summons is pending. Your periods of limitation will also be suspended under section 7609(e)(2) if the summoned person fails to fully respond to this summons for 6 months. The suspension under section 7609(e)(2) will begin 6 months after the summons is served and will continue until the summoned person finally resolves the obligation to produce the summoned information. You can contact the IRS officer identified on the summons for information concerning the suspension under section 7609(e)(2). If you contact the IRS officer for this purpose, please provide the following information: (1) your name, address, home and work telephone numbers and any convenient time you can be contacted and (2) a copy of the summons or a description of it that includes the date it was issued, the name of the IRS employee who issued it, and the name of the summoned person.

The relevant provisions of the Internal Revenue Code are enclosed with this notice. If you have any questions, please contact the Internal Revenue Service officer before whom the person summoned is to appear. The officer's name and telephone number are shown on the summons.



Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

**Part D —** to be given to noticee

**Sec. 7609. Special procedures for third-party summonses.**

(a) Notice-
 (1) In general. - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash.
 (2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.
 (3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

(b) Right to intervene; right to proceeding to quash.-
 (1) Intervention. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.
 (2) Proceeding to quash. -
  (A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.
  (B) Requirement of notice to person summoned and to Secretary. - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a) (1 ).
  (C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

(c) Summons to which section applies.-
 (1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.
 (2) Exceptions. - This section shall not apply to any summons
  (A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;
  (B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;
  (C) issued solely to determine the identify of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);
  (D) issued in aid of the collection of-
   (i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or
   (ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause; or
  (E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and
   (ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

 (3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g).
 (4) Records. - For purposes of this section, the term records includes books, papers, and other data.

produced under a summons as to which notice is required under subsection (a) may be made -
 (1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or
 (2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.

(e) Suspension of Statute of Limitations. -
 (1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.
 (2) Suspension after 6 months of service of summons. - In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-
  (A) beginning on the date which is 6 months after the service of such summons, and
  (B) ending with the final resolution of such response.

(f) Additional requirements in the case of a John Doe summons. -
Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in whiche the Secretary establishes that -
 (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
 (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
 (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

(g) Special exception for certain summonses. -
A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

(h) Jurisdiction of district court; etc. -
 (1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.
 (2) Special rule for proceedings under subsections (f) and (g). - The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

(i) Duty of summoned party. -
 (1) Recordkeeper must assemble records and be prepared to produce records.- On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined.
 (2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.
 (3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure.
 (4) Notice of suspension of statute of limitations in the case of a John Doe summons. - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f).

(j) Use of summons not required. -
Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602.

Form **2039** (Rev. 10-2010)

# Suspension of Corporate Taxpayer's Period of Limitations on Assessment If a Court Proceeding is Brought Regarding a Designated or Related Summons

The IRS may issue designated or related summonses to examine the tax liability of certain corporations. A designated summons will be identified by a statement at the top of the summons that reads: "This is a designated summons pursuant to IRC 6503(j)." A related summons will be identified by a similar statement at the top of the summons indicating that it is a related summons issued pursuant to I.R.C. sec. 6503(j).

If you are a corporate taxpayer and the IRS has issued a designated or related summons to investigate your tax liability, your period of limitations on assessment will be suspended if a court proceeding concerning the summons is begun. This suspension will be effective on the day the court proceeding is brought. If the court orders any compliance with the summons, the suspension will continue until 120 days after the summoned person finally resolves his response to the summons. If the court does not order any compliance with the summons, then the period of limitations will resume running on the day after final resolution (but the period of limitations will not expire before the 60th day after final resolution).

To obtain information about the dates of the suspension under section 6503(j), you can contact the IRS officer before whom the person summoned is to appear. The officer's name and telephone number are identified on the summons.



Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

**Part E —** to be given to the corporate taxpayer only if this is a designated or related summons

**Sec 6503(j).  Extension in case of certain summonses**

(1) In General—

If any designated summons is issued by the Secretary to a corporation (or to any other person to whom the corporation has transferred records) with respect to any return of tax by such corporation for a taxable year (or other period) for which such corporation is being examined under the coordinated examination program (or any successor program) of the Internal Revenue Service, the running of any period of limitations provided in section 6501 on the assessment of such tax shall be suspended—

(A) during any judicial enforcement period--

(i) with respect to such summons, or

(ii) with respect to any other summons

which is issued during the 30-day period which begins on the date on which such designated summons is issued and which relates to the same return as such designated summons, and

(B) if the court in any proceeding referred to in paragraph (3) requires any compliance with a summons referred to in subparagraph (A), during the 120 day period beginning with the 1st day after the close of the suspension under subparagraph (A).

If subparagraph (B) does not apply, such period shall in no event expire before the 60th day after the close of the suspension under subparagraph (A).

(2) Designated and related summonses—

(A)  In General -- The term "designated summons" means any summons issued for purposes of determining the amount of any tax imposed by this title if--

(i)  the issuance of such summons is preceded by a review of such issuance by the regional counsel of the Office of Chief Counsel for the region in which the examination of the corporation is being conducted,

(ii) such summons is issued at least 60 days before the day on which the period prescribed in section 6501 for the assessment of such tax expires (determined with regard to extensions), and

(iii) such summons clearly states that it is a designated summons for purposes of this subsection.

(B) Limitation -- A summons which relates to any return shall not be treated as a designated summons if a prior summons which relates to such return was treated as a designated summons for purposes of this subsection.

(3) Judicial Enforcement Period -- For purposes of this subsection, the term "judicial enforcement period" means, with respect to any summons, the period –

(A) which begins on the day on which a court proceeding with respect to such summons is brought, and

(B) which ends on the day on which there is a final resolution as to the summoned person's response to such summons.

Form **2039** (Rev.10-2010)

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to Coinbase, Inc. (d/b/a Coinbase)

## <u>DOCUMENTS</u>

For each Coinbase user for which your records show any U.S. address, U.S. telephone number, U.S. e-mail domain, or U.S. bank account, produce the following records for the period January 1, 2013 through December 31, 2015 unless otherwise stated:

1.  Account/wallet/vault registration records for each account/wallet/vault owned or controlled by the user during the period stated above including, but not limited to, complete user profile, history of changes to user profile from account inception, complete user preferences, complete user security settings and history (including confirmed devices and account activity), complete user payment methods, and any other information related to the funding sources for the account/wallet/vault, regardless of date.

2.  Any other records of Know-Your-Customer due diligence performed with respect to the user not included in paragraph 1, above.

3.  For any account/wallet/vault with respect to which the registered user gave any third party access, control, or transaction approval authority, all powers of attorney, letters of wishes, corporate minutes, or other agreements or instructions granting the third party such access, control, or approval authority.

4.  All records of account/wallet/vault activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, the names or other identifiers of counterparties to the transaction; requests or instructions to send or receive bitcoin; and, where counterparties transact through their own Coinbase accounts/wallets/vaults, all available information identifying the users of such accounts and their contact information.

5.  For each merchant user for which you act as Payment Service Provider, records of all payments processed, including records identifying the user of the wallet charged, if a Coinbase user, or the address of the wallet charged, if not, the date and amount of the transaction, and any other information that will enable the merchant to identify the transaction.

6.  All correspondence between Coinbase and the user or any third party with access to the account/wallet/vault pertaining to the account/wallet/vault, including but not limited to letters, memoranda, telegrams, telexes, facsimiles, e-mail, letters of instruction, and memoranda of telephone or oral instructions received.

7.  All periodic statements of account or invoices (or the equivalent).

14141608.1

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to Coinbase, Inc. (d/b/a Coinbase)

8.   All records of payments to or from the user by checks, wire or other electronic transfer, ACH transaction, PayPal transfer, credit or debit card transaction, money order, transfer to or from other digital currency wallet address, or any other method, including records reflecting the form, manner, nature, and purpose of such payment including, but not limited to, ABA routing number and other routing information, payment instructions, and any and all invoices, billing statements, receipts, or other documents memorializing and describing such transaction.

9.   All exception reports produced by your AML system, and all records of investigation of such exceptions.

For the purpose of this summons, you are required to produce all documents described in this attachment, whether located in the United States or otherwise, that are in your possession, custody, or control, or otherwise accessible or available to you either directly or through other entities.

INSTRUCTIONS FOR PRODUCTION OF ELECTRONICALLY STORED RECORDS

If the records requested herein are stored in your record retention systems and/or by your technology, data, or other service providers, it should be produced on electronic media according to the following criteria:

I.   Text Data
   A.   Text data relating to transactions shall be produced within a data file:
      1.   Using a delimited ASCII text data format; or
      2.   Using software that can export to a commonly readable, nonproprietary file format without loss of data.
      3.   If text data is stored in a format readable only by proprietary software, provide a copy of software necessary to enable the data to be retrieved, manipulated, and processed by a computer.
   B.   Text data files relating to transactions shall include field descriptions (e.g., account number, date/time, description, payee/payor, check number, item identifier, amount, etc.)

II.   Image Data
   A.   Image data shall be produced in graphic data files in a commonly readable, nonproprietary format with the highest image quality maintained.
   B.   Image data of items associated with transactions (e.g., cancelled checks, deposit slips, etc.) shall be:
      1.   Produced in individual graphic data files with any associated endorsements;
      2.   Linked to corresponding text data by a unique identifier; and

2

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to Coinbase, Inc. (d/b/a Coinbase)

3.  Image collections, OCR (optical character recognition), and image linking files must be produced in a Concordance load-ready format, ideally in a Concordance database.

III.  Encryption/Authentication

A.  Electronically stored records may be transmitted in an encrypted container. Decryption keys and/or passwords shall be produced separately at the time the data is produced.

B.  Authentication, such as hash coding, may be set by agreement.

C.  Affidavits or certificates of authenticity for the records may be included as part of the electronic production.

If you have questions about the format in which to provide electronic data, please contact Revenue Agent David J. Hooczko by telephone at (626) 927-1237.

Before you produce any of the above-listed records, please contact Revenue Agent Utzke by telephone at (626) 927-1237 to discuss the terms of compliance.

The personal appearance requirement is waived when the requested information is furnished by mail to Revenue Agent Utzke at 1818 East Southern Avenue, Mesa, AZ 85204.

14141608.1

# EXHIBIT 2



820 First Street NE, Suite 510
Washington, DC 20002

Tel: 202-408-1080
Fax: 202-408-1056

center@cbpp.org
www.cbpp.org

Updated April 4, 2016

# IRS Funding Cuts Compromise Taxpayer Service and Weaken Enforcement

By Chuck Marr and Cecile Murray[1]

The Internal Revenue Service (IRS) budget has been cut by 17 percent since 2010, after adjusting for inflation, forcing the IRS to reduce its workforce, severely scale back employee training, and delay much-needed upgrades to information technology systems.  These steps, in turn, have weakened the IRS's ability to enforce the nation's tax laws and serve taxpayers efficiently, as the National Taxpayer Advocate, the Treasury Inspector General for Tax Administration, the IRS Oversight Board, and the Government Accountability Office have all documented.  As seven former IRS commissioners from both Republican and Democratic administrations have written: "Over the last fifty years, none of us has ever witnessed anything like what has happened to the IRS appropriations over the last five years and the impact these appropriations reductions are having on our tax system."[2]

National Taxpayer Advocate Nina Olson recently highlighted an example underscoring the deep impact of the budget crisis on taxpayer service.  Taxpayers whose returns the IRS' Taxpayer Protection Program (TPP) flagged as potentially subject to identity theft need to contact the IRS by phone or online to get their returns processed.  "All of these legitimate taxpayers were desperately attempting to free up their refunds," she told Congress, "yet at one point during the filing season [in 2015] the level of service on the TPP line was below ten percent for three consecutive weeks — meaning more than 90 percent of calls were not answered!"[3]

In response to criticism, Congress agreed to a small nominal increase in IRS funding for fiscal year 2016, though funding was essentially flat in inflation-adjusted terms.  The year-end omnibus appropriations bill provided an additional $290 million to improve taxpayer services (in part by

---

[1] Brandon DeBot, Joel Friedman, and Nathaniel Frentz contributed to earlier versions of this paper.

[2] Former IRS Commissioners Mortimer M. Caplan, Sheldon S. Cohen, Lawrence B. Gibbs, Fred T. Goldberg, Jr., Shirley D. Peterson, Margaret M. Richardson, and Charles O. Rossotti, "Letter to the Honorable Thad Cochran, the Honorable Barbara A. Mikulski, the Honorable Harold Rogers, and the Honorable Nita M. Lowey: IRS Appropriations for Fiscal Year 2016," November 9, 2015, http://taxprof.typepad.com/files/former-irs-commissioners-letter-on-agency-budget.pdf.

[3] Nina E. Olson, "2015 Annual Report to Congress: Preface," National Taxpayer Advocate, January 6, 2016, p. vii, http://www.taxpayeradvocate.irs.gov/Media/Default/Documents/2015ARC/ARC15_ExecSummary.pdf.

hiring seasonal employees), strengthen cybersecurity, and expand the agency's ability to address identity theft.

Still, this small increase is not enough to make up for the deep funding cuts, and the resulting reductions in personnel, the IRS has experienced since 2010.  IRS Commissioner John Koskinen testified that despite the modest boost, "the IRS is still under significant financial constraints," and that he expects the permanent IRS workforce to continue shrinking this year.[4]  At the same time, the IRS' workload continues to *increase* (see Figure 1).

## IRS Funding Cut Despite Increased Workload

Changes since 2010

**Reduced Resources and Services**

- Funding cut 17 percent
- Over 13,000 fewer employees (14 percent decline)
- Nearly 12,000 fewer enforcement staff (23 percent decline)
- Lowest individual and business audit levels in a decade

**Increased Responsibilities**

- 9 million more individual tax returns filed (7 percent increase)
- Implement Foreign Account Tax Compliance Act
- Implement Affordable Care Act
- Continuing challenge to prevent identity theft

Note: Estimates based on latest data available.  Numbers reflect changes from 2010 to 2016, except for individual tax returns (2015) and audit levels (2015).

Source: CBPP analysis of Internal Revenue Service, National Taxpayer Advocate, Treasury Inspector General for Tax Administration, and Congressional Budget Office data

CENTER ON BUDGET AND POLICY PRIORITIES | CBPP.ORG

The President's fiscal year 2017 budget offers a framework for reversing these harmful cuts, boosting IRS funding by about 9 percent over the 2016 level (or 7 percent, adjusted for inflation).  The increased funding focuses on enforcement, taxpayer services, and information technology investments.  But even with these additional resources, IRS funding would remain roughly 12 percent below the 2010 level, adjusted for inflation.

The IRS plays a fundamental role in our system of government by helping taxpayers comply with the tax code and ensuring that the nation's tax laws are enforced fairly and credibly, as well as by collecting nearly all of the revenue that funds federal programs from national defense and the safety net to roads, science research, and education.  Policymakers must provide the resources it needs to do these jobs effectively.

---

[4] Testimony of IRS Commissioner John A. Koskinen on the IRS budget and current operations, hearing before the Senate Finance Committee, February 10, 2016, http://www.finance.senate.gov/imo/media/doc/2016%20JAK%20testimony%20SFC%20on%20FY17%20budget%20021016x.pdf.

## IRS Funding Has Fallen Sharply Since 2010

Since regaining a majority in the 2010 elections, House Republicans have targeted the IRS for sharp cuts. As Figure 2 shows, the agency's inflation-adjusted funding has fallen sharply since 2010. Even though Congress and the Administration negotiated a small $290 million increase in 2016, it was barely enough to keep up with inflation. As a result, IRS funding is still 17 percent below the 2010 level, adjusted for inflation. Even in nominal terms — ignoring inflation — IRS funding this year is $900 million or 8 percent below its 2010 level.

To be sure, funding for non-defense appropriations has been under pressure in recent years, in large part due to the funding caps set in the 2011 Budget Control Act and subsequently lowered by sequestration. But the IRS has been targeted for particularly deep cuts, with inflation-adjusted cuts since 2010 that are 50 percent greater than the overall average cut in non-defense appropriations.

### Cuts in Workforce and Training

Three-quarters of the IRS budget goes to personnel, 85 percent of whom are directly involved in enforcing tax laws or providing taxpayer services.[5] Accordingly, in the face of low funding, the IRS has cut its workforce substantially — by about 13,000, or 14 percent, between 2010 and 2016 (see Figure 3). The modest 2016 funding increase allowed the agency to hire additional staff, including seasonal employees to assist with customer service during filing season. But the increase is insufficient to stop all the bleeding: Commissioner Koskinen expects the permanent IRS workforce to shrink, as it is unable to replace most employees leaving through attrition.[6] Importantly, the total number of enforcement employees continues to dwindle.

The IRS Oversight Board, an independent body that Congress created to provide long-term guidance to the IRS, explained in 2014 how these cuts are affecting the IRS workforce:

> The workforce has decreased over the last four years due to a longstanding combination of attrition and a hiring freeze. As the result of the hiring freeze, new employees replace outgoing employees at a rate of one to five. This means a current IRS employee will see five coworkers leave, some of them the most experienced and well trained, before one new employee is eventually hired to cope with a growing workload. This puts enormous stress



FIGURE 2

**IRS Funding Has Fallen Sharply**

IRS appropriated funding in 2016 dollars, billions

$13.6  $13.3  $12.7  $11.7  $11.7  $11.2  $11.2

2010  2011  2012  2013  2014  2015  2016

Source: CBPP calculations based on Congressional Budget Office, Office of Management and Budget, and Bureau of Labor Statistics data

CENTER ON BUDGET AND POLICY PRIORITIES | CBPP.ORG

---

[5] Based on data in Government Accountability Office, "Internal Revenue Service: Observations on IRS's Operations, Planning, and Resources," February 27, 2015, http://www.gao.gov/assets/670/668769.pdf.

[6] Testimony of IRS Commissioner Koskinen, hearing before the Senate Finance Committee, February 10, 2016.

on new employees arriving at understaffed offices and those who remain as they shoulder the burden of the work left behind until a new employee arrives to help.[7]

National Taxpayer Advocate Olson summed up the consequences of the shrinking workforce, saying: "I do not see any substitute for sufficient personnel if the IRS is to provide high-quality taxpayer service."[8]



FIGURE 3

## IRS Has Cut Staff by 14 Percent Since 2010

IRS full-time-equivalent staff funded through appropriations, by fiscal year

Source: Government Accountability Office through 2014; Internal Revenue Service congressional budget justifications for 2015 and 2016.

CENTER ON BUDGET AND POLICY PRIORITIES | CBPP.ORG

### Decline in Taxpayer Services

The cuts since 2010 have significantly weakened taxpayer services. As the Government Accountability Office (GAO) found last year, "A reduced budget and increased workload has contributed to performance declines across the agency, including serious concerns about service to taxpayers during filing season."[9]

Last year's tax filing season was particularly "abysmal," according to IRS Commissioner Koskinen. In 2010, about three-quarters of calls to the IRS were answered, with an average wait time of 11

---

[7] IRS Oversight Board, "FY2015 IRS Budget Recommendation Special Report," May 2014, p. 15, http://www.treasury.gov/IRSOB/reports/Documents/IRSOB%20FY2015%20Budget%20Report-FINAL.pdf.

[8] Written statement of Nina E. Olson, National Taxpayer Advocate, hearing before the House Committee on Oversight and Government Reform, Subcommittee on Government Operations, April 15, 2015, http://www.irs.gov/pub/tas/Testimony_House_Oversight_NTA_report-4-15-2015.pdf.

[9] Government Accountability Office, "Internal Revenue Service: Observations on IRS's Operations, Planning, and Resources," February 27, 2015, p. 33, http://www.gao.gov/assets/670/668769.pdf.

minutes.[10]  During last year's filing season, only 37 percent of calls were answered, with an average wait of 23 minutes.  This means that more than 60 percent of calls were not answered at all.[11]  Relatedly, the number of "courtesy disconnects," when taxpayer calls are dropped because the IRS's switchboard is overloaded, grew dramatically to about 8.8 million this year, up from 544,000 in 2014.[12]  The IRS also answered only "basic" tax questions this filing season, and it no longer helps low-income, disabled, or elderly taxpayers prepare returns.  Outside of tax season, the IRS no longer answers *any* questions.

Similarly, while the IRS conducts important business with taxpayers through the mail (including individual examinations and clarifications on how much tax a filer owes), it has failed to respond in a timely manner to significant amounts of correspondence in recent years due to inadequate funding.[13]

These cuts threaten low-income and other vulnerable taxpayers in particular, as these populations are more likely to need personal assistance to comply with their tax obligations. [14]

Taxpayers caught up in identity theft issues faced particular frustration last year.  The IRS must aggressively combat identity theft but must also have the resources to limit the inconvenience of taxpayers whose identities have been stolen or who have be incorrectly been captured by IRS screening filters.  Taxpayers caught up as a "false positive" must contact the IRS and verify who they are to unlock the processing of their return and any refund.  Yet during the 2015 filing season, the Taxpayer Protection Program line that affected taxpayers were directed to call answered only *17 percent* of calls.  During some weeks, *more than 90 percent* of these calls went unanswered.[15]

The dismal state of taxpayer services last year helped convince Congress to boost IRS funding modestly for 2016.  About $178 million of the added $290 million is going to taxpayer services, according to Commissioner Koskinen, including the hiring of seasonal employees to provide phone and correspondence service during the 2016 tax filing season.  He also projected that the phone answer rate would be in the mid-60 percent range during filing season this year.[16]  It's essential that this positive trend continue and that Congress commit itself to restoring the IRS's budget so that it can provide the service that honest taxpayers deserve.

---

[10] Government Accountability Office, "Internal Revenue Service: Absorbing Budget Cuts Has Resulted in Significant Staffing Declines and Uneven Performance," briefing for congressional committees, April 10, 2014, p. 13, http://www.gao.gov/assets/670/662681.pdf.

[11] National Taxpayer Advocate, "FY 2016 Objectives Report to Congress: Review of the 2015 Filing Season," p. 9, http://www.taxpayeradvocate.irs.gov/Media/Default/Documents/2016-JRC/2015_Filing_season_review.pdf.

[12] *Ibid.,* p. 18.

[13] See, for example: GAO, February 27, 2015.

[14] Olson, February 25, 2015.

[15] National Taxpayer Advocate, "FY 2016 Objectives Report to Congress: Review of the 2015 Filing Season," p. 26.

[16] Internal Revenue Service, "Commissioner Koskinen's Speech to the National Press Club," March 24, 2016, https://www.irs.gov/uac/March-24-2016-Commissioner-Koskinen-Speech-to-National-Press-Club.

## Weakening of Enforcement

Since 2010, the number of IRS staff devoted to enforcing tax laws has dropped from over 50,000 to below 39,000, a decline of 23 percent.[17]  (See Figure 4.)  Among other things, the cuts have put pressure on the IRS's Criminal Investigations Division (CI), which plays a crucial role in enforcement by investigating potentially criminal tax code violations.  This division's activities not only sanction tax evaders but also provide a strong incentive for voluntary compliance.  However, the number of these agents continues to fall as resources shrink.  As former IRS Criminal Investigation chief Mark Matthews recently put it, "The inevitable result of CI budget declines is a decline in CI's core product — criminal cases and convictions."[18]



FIGURE 4

**IRS Has Cut Enforcement Staff by 23 Percent Since 2010**

IRS full-time-equivalent enforcement staff funded through appropriations, by fiscal year

Source: Government Accountability Office through 2014; Internal Revenue Service congressional budget justifications for 2015 and 2016.

CENTER ON BUDGET AND POLICY PRIORITIES | CBPP.ORG

As a result of cuts, the IRS is conducting fewer audits overall and fewer audits of high-income taxpayers and businesses.  In 2010, it audited 1.1 percent of individual returns; in 2015, it audited only 0.8 percent, the lowest level in a decade.[19]  The IRS audited 1.2 million taxpayers in 2015 — 13,700 fewer than in 2014 and over 350,000 below 2010.[20]  This represents a 22 percent drop.

---

[17] GAO, February 27, 2015, p. 35; Internal Revenue Service Congressional Budget Justification, Fiscal Year 2016, https://www.treasury.gov/about/budget-performance/CJ16/02-06.%20IRS%20FY%202016%20CJ.pdf; Internal Revenue Service Congressional Budget Justification, Fiscal Year 2017, https://www.treasury.gov/about/budget-performance/CJ17/02-06.%20IRS%20FY%202017%20CJ%201%2022%2016%20v2%20FINAL%20CLEAN.PDF.

[18] Mark Matthews, "IRS Criminal Investigation: A National Asset Being Damaged," *Tax Notes*, March 15, 2016.

[19] Internal Revenue Service, "2010 Data Book," https://www.irs.gov/pub/irs-soi/10databk.pdf; Internal Revenue Service, "2015 Data Book," https://www.irs.gov/pub/irs-soi/15databk.pdf.

[20] Internal Revenue Service, "Prepared Remarks of Commissioner Koskinen before the AICPA," November 3, 2015, https://www.irs.gov/uac/Prepared-Remarks-of-Commissioner-Koskinen-before-the-AICPA.

Audits recovered about 30 percent ($30 billion) less in revenue in the past five years than in the prior five years.

Enforcement has suffered in part in spite of evidence that various IRS enforcement efforts save many times what they cost. The Treasury estimates, for example, that every additional $1 invested in IRS tax enforcement beyond current levels would yield $4 in increased revenue.[21] As Commissioner Koskinen summarized, "Essentially, the government is losing billions to achieve budget savings of a few hundred million dollars."[22]

## Delays in Upgrading Information Technology and Cybersecurity

The IRS needs state-of-the-art information technology (IT) to perform its core functions of collecting taxes and enforcing the nation's tax laws while countering sophisticated identity thieves and tax evaders and addressing taxpayers' privacy concerns. The IRS lags behind in this area. For example, some IRS computers still run on an operating system that is so outdated Microsoft no longer services it; the IRS had to spend scarce funds to set up custom support.[23] Commissioner Koskinen notes that the IRS uses "applications that were running when John F. Kennedy was President."[24] He concludes, "We're falling behind in upgrading hardware infrastructure and software. This compromises the stability and reliability of our information systems, and leaves us open to more system failures and potential security breaches."[25]

GAO has reported that budget constraints have contributed to delays in two essential IT projects: Information Reporting and Documentation Matching, designed to match documents such as 1099-K forms with individual tax returns to help track down underreported income; and the Return Review Program (RRP), designed to replace the outmoded Electronic Fraud Detection System, the IRS's main system for detecting fraudulent returns.[26] Part of the IRS effort to prevent identity thieves from obtaining tax refunds fraudulently, the RRP is meant to allow the IRS to more quickly and flexibly adjust its fraud detection filters to stay ahead of would-be identity thieves.[27]

Identity theft continues to present a major challenge for the IRS, making IT investments all the more critical. The seven former IRS commissioners warned that "increasing incidents of identity theft and refund fraud are being perpetrated against our tax system by large crime syndicates around

---

[21] Internal Revenue Service, "Prepared Remarks of Commissioner Koskinen before the AICPA," November 3, 2015. The IRS calculates return on investment (ROI) performance measures for a variety of program areas; it estimates the agency-wide ROI ratio is $4 to $1. However, ROI for specific enforcement activities is substantially higher.

[22] John Koskinen, "Koskinen Discusses Challenges Facing IRS, Tax Industry," *Tax Notes,* October 31, 2014.

[23] IRS Oversight Board, "FY2015 IRS Budget Recommendation Special Report," May 2014, p. 15, http://www.treasury.gov/IRSOB/reports/Documents/IRSOB%20FY2015%20Budget%20Report-FINAL.pdf.

[24] John Koskinen, "Koskinen Discusses Major Challenges Facing IRS," *Tax Notes,* February 24, 2015.

[25] John Koskinen, "Koskinen Discusses Challenges Facing IRS, Tax Industry," *Tax Notes,* October 31, 2014.

[26] Government Accountability Office, Letter to the Honorable Ron Wyden, the Honorable Tom Udall, and Honorable Charles W. Boustany, Jr., "Absorbing Budget Cuts Has Resulted in Significant Staffing Declines and Uneven Performance," April 21, 2014, p. 24, http://www.gao.gov/products/GAO-14-534R.

[27] Testimony of J. Russell George, Treasury Inspector General for Tax Administration, before the Senate Appropriations Committee, Subcommittee on Financial Services and General Government, March 8, 2016, http://www.appropriations.senate.gov/imo/media/doc/030816%20-%20George%20-%20TIGTA%20-%20Testimony.pdf.

the world."[28]  And last year GAO added "tax refund fraud due to identity theft" to its list of areas of government operation that are especially vulnerable to fraud, waste, and abuse.[29]

In a recent *Tax Notes* article, former long-serving IRS officials commented that "fighting identity theft is increasingly challenging for the IRS, as thieves continue to develop more sophisticated ways of stealing person and business information."[30]  While the IRS has implemented new strategies to combat identity theft, the means that identity thieves use are constantly evolving.  IRS Commissioner Koskinen put the issue in budgetary terms when he testified that, despite additional funds in 2016 for cybersecurity and identity theft, the agency "needs to continue investing in resources and tools to stay ahead of criminals."[31]

## IRS Responsibilities Growing

Restoring IRS funding to a more adequate level is important both to reverse the decline in taxpayer service and enable the agency to handle its growing responsibilities in areas such as identity theft and health reform.

Health reform "contains an extensive array of tax law changes that, absent added funding, will present budgetary challenges for the IRS in coming years," the Treasury Inspector General for Tax Administration reports.[32]  Most importantly, the IRS administers the premium tax credits to help millions of near-poor and middle-income taxpayers afford coverage in the health insurance marketplaces as well as assistance with health insurance deductibles and co-payments for taxpayers with modest incomes.  The IRS also administers health reform's "individual mandate," determining whether people who don't buy health insurance during the year are subject to a penalty.  But Congress has failed to provide the IRS with any funds to implement health reform, forcing the agency to divert funds from other areas, such as IT.[33]

Another major new set of IRS responsibilities concerns the Foreign Account Tax Compliance Act (FATCA).  Enacted in 2010, FATCA seeks to reduce illegal tax evasion by requiring filers and financial institutions to report more information to the IRS about assets held in offshore accounts.

---

[28] Letter from former IRS commissioners to the Appropriations Committees on the agency's budget, November 9, 2015, http://static.politico.com/e6/8e/440d6ce747418acb1fe0cd09d04c/former-irs-commissioners-letter-on-agency-budget.pdf.

[29] GAO, "Report to Congressional Committees: High-Risk Series, An Update," February 2015, p. 314, http://www.gao.gov/assets/670/668415.pdf.

[30] Kevin Brown and Beth Tucker, "Identity Theft Challenges and the IRS," *Tax Notes*, March 15, 2016.

[31] Testimony of John Koskinen before the Senate Appropriations Committee, Subcommittee on Financial Services and General Government, March 8, 2016.

[32] Testimony of Alan R. Duncan, Assistant Inspector General for Audit, Treasury Inspector General for Tax Administration, joint hearing before the House Committee on Oversight and Government Reform, Subcommittee on Energy Policy, Health Care and Entitlements and the House Committee on Homeland Security, Subcommittee on Cybersecurity, Infrastructure Protection, and Security Technologies, July 17, 2013, p. 1.

[33] Commissioner Koskinen recently testified, "We have had to defer hundreds of millions of dollars' worth of important information technology (IT) projects and improvements since FY 2014 in order to meet our statutory requirements to implement the ACA."  Hearing before the Senate Finance Committee, February 10, 2016.

More than 150,000 financial institutions in 112 countries have already registered under FATCA.[34] The IRS needs added personnel and IT resources to collect and analyze the large amounts of information that FATCA will generate and to conduct enforcement activities where warranted.[35]

Yet Congress has rejected requests for new funding for these new responsibilities, instead cutting the IRS's budget as noted.[36]

In addition, the number of tax filers continues growing. The number of individual income tax returns has grown by more than 9 million (7 percent) since 2010.[37] (See Figure 5.) In 2015, IRS funding was no higher than in 1998 after adjusting for inflation, but the number of returns filed was *30 million* (23 percent) higher.[38]

## More Adequate Funding Needed

Congress authorized a modest nominal increase in IRS funding for fiscal year 2016, though funding was flat in inflation-adjusted terms. The bigger picture remains that IRS funding has been cut by nearly one-fifth since 2010, despite Congress's enactment of new responsibilities for the agency and growing identity-theft attacks on the tax administration system. There is an urgent need for Congress to quickly and substantially build on the small funding step for 2016.

The Administration has requested $12.3 billion in IRS funding for fiscal year 2017, a 7 percent increase (after adjusting for inflation), though it would still leave the IRS 12 percent below 2010 funding levels. The added funding would support specific initiatives such as:



FIGURE 5

**IRS Funding Cut as Workload Grows**

Percent change since 2010

IRS funding -17%, IRS employees -14%, IRS enforcement employees -23%, Individual tax return filed 7%

Source: CBPP calculation based on IRS, National Taxpayer Advocate, and Congressional Budget Office data

CENTER ON BUDGET AND POLICY PRIORITIES | CBPP.ORG

[34] John Koskinen, "Koskinen Discusses Major Challenges Facing IRS," *Tax Notes,* February 24, 2015.

[35] Internal Revenue Service, "FY 2016 President's Budget," February 2, 2015, http://www.treasury.gov/about/budget-performance/CJ16/02-06.%20IRS%20FY%202016%20CJ.pdf.

[36] For more, see Brandon DeBot and Chuck Marr, "Poor IRS Service Reflects Congress's Deep Funding Cuts," Center on Budget and Policy Priorities, June 1, 2015, http://www.cbpp.org/research/federal-tax/poor-irs-service-reflects-congresss-deep-funding-cuts.

[37] Based on data presented by the National Taxpayer Advocate in "2015 Annual Report to Congress," Volume 1, Taxpayer Advocate Service, January 6, 2016, http://www.taxpayeradvocate.irs.gov/Media/Default/Documents/2015ARC/ARC15_Volume1.pdf, p. 9.

[38] Testimony of the Honorable John A. Koskinen, Commissioner of the Internal Revenue Service, hearing before the House Appropriations Committee, Subcommittee on Financial Services and General Government, March 18, 2015, http://docs.house.gov/meetings/AP/AP23/20150318/103111/HHRG-114-AP23-Wstate-KoskinenJ-20150318.pdf.

- Answering 70 percent of calls to the agency throughout the year;

- Providing additional staffing and technology to help prevent fraud related to identity theft and assist taxpayers innocently caught up in it;

- Addressing the recent defunding of tax enforcement and reversing the decline in audits; and

- Implementing health reform, and reducing the need for the IRS to divert resources from other areas.[39]

Collecting taxes is one of government's most essential functions, yet budget cuts in recent years have made it harder for the IRS to enforce tax laws, and implementing new laws such as health reform and FATCA has added to the agency's responsibilities. Policymakers should give the IRS sufficient resources to carry out its mission. In particular, policymakers who profess to be concerned about the nation's fiscal course should provide the IRS with the funding it needs to administer the nation's tax laws and collect taxes due under the laws of the land.

---

[39] Testimony of IRS Commissioner John A. Koskinen, hearing before the Senate Finance Committee, February 10, 2016.